WOOD, RESPONDENT, *v.* FERGUSON ET AL., DEFENDANTS; DEAN, ADMX., APPELLANT.

(No. 5,554.)

(Submitted October 25, 1924. Decided November 21, 1924.)

[230 Pac. 592.]

*Promissory Notes — Negotiability — Provision for Attorney's Fee and Costs of Collection—Holder in Due Course—Mortgage Security, When not Defense—Limiting Liability—Collateral Agreement No Defense Against Holder in Due Course.*

Evidence—Telephonic Conversation—Admissibility.
  1. *Quaere:* Is evidence of a telephonic conversation admissible where the number of the person (since deceased) was called and a person purporting to be the person called answers?

[71 Mont. 540.]

Promissory Notes—Provisions for Attorney's Fee and Costs of Collection—Negotiability.

2.  A promissory note containing a provision for the payment of an attorney's fee and costs of collection, instead of the statutory phrase "with costs of collection or an attorney's fee," was not thereby rendered non-negotiable, the words "attorney's fee" and "costs of collection" in this connection meaning the same thing, so that the use of both of them in the conjunctive imposed no greater burden upon the maker than would their use in the disjunctive have done.

Same—Holder in Due Course—Definition.

3.  A holder of a promissory note who bought it before maturity in good faith paying full value therefor, without actual knowledge or notice that it was secured by a mortgage, or of the assignment of the note containing a provision that it was being transferred without recourse, was a holder in due course within the meaning of section 8459, Revised Codes of 1921.

Same—Unqualified Indorsement—Extent of Liability of Indorser.

4.  An unqualified indorsement of a promissory note warrants to all subsequent holders in due course that the instrument is genuine, that the indorser has good title to it, that all prior parties had capacity to contract, that the note at the time of his indorsement was valid and subsisting, that it will be paid according to its tenor, and that in case of its dishonor he will pay the amount of it to the holder or to any subsequent indorser who may be compelled to pay it.

Same—Mortgage Security—When not Defense.

5.  Under the above rules, *held*, in an action on a negotiable promissory note by a holder in due course who at the time of its purchase had no actual knowledge or notice that it was secured by a mortgage, the defense of the existence of the mortgage was not available to the maker or indorsers.

Same—Collateral Agreement Limiting Liability—Not Defense Against Holder in Due Course.

6.  An independent collateral agreement between the parties to a negotiable promissory note limiting liability cannot be set up as a defense against a subsequent holder in due course; hence a restrictive clause in the assignment of the mortgage and the note secured thereby that the assignment was made without recourse could not defeat the right of the holder to recover.

*Appeal from District Court, Cascade County; H. H. Ewing, Judge.*

ACTION by Anna B. Wood against Robert Ferguson and others. From a judgment for plaintiff, defendant, Lizzie Dean, administratrix of the estate of C. W. Dean, deceased, appeals. Affirmed.

2.  Provisions for attorney's fees as affecting negotiability of note, see notes in 21 Am. Rep. 212; 4 Ann. Cas. 263; Ann. Cas. 1912D, 165; L. R. A. 1915B, 928; L. R. A. 1916B, 675.

3.  Who is bona fide holder, see notes in 9 Am. Dec. 272; 44 Am. Dec. 698.

*Messrs. Smith & Eickemeyer,* for Appellant, submitted a brief.

The judgment should be reversed for the reason that the action should have been brought for the foreclosure of the mortgage or else plaintiff should have shown that the mortgage security was lost or rendered valueless through no fault of the plaintiff or her assignor. (Sec. 9467, Rev. Codes 1921; *Largey* v. *Chapman,* 18 Mont. 563, 564, 46 Pac. 808; *Brophy* v. *Downey,* 26 Mont. 252, 255, 67 Pac. 312; *State Savings Bank* v. *Albertson,* 39 Mont. 414, 102 Pac. 692; 27 Cyc. 1324.)

The notes in suit are non-negotiable. (*Union Bank & T. Co.* v. *Himmelbauer,* 56 Mont. 82, 181 Pac. 332; *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4; *Buhler* v. *Loftus,* 53 Mont. 546, 165 Pac. 601; *National Hardwood Co.* v. *Sherwood,* 165 Cal. 1, 130 Pac. 881; *Smiley* v. *Watson,* 23 Cal. App. 409, 138 Pac. 367, 368.)

*Messrs. Norris, Hurd & Rhoades* and *Mr. E. J. McCabe,* for Respondent, submitted a brief; *Mr. C. H. Hall,* of Counsel, argued the cause orally.

That a telephonic conversation is now admissible is generally held where the number of the person is called and a person answers purporting to be the person called, or purporting to have authority to act for the person called. (22 C. J., sec. 336, pp. 301, 302; *Gardner* v. *Herman,* 116 Minn. 161, 133 N. W. 558; *Indiana Union Traction Co.* v. *Scribner,* 47 Ind. App. 621, 93 N. E. 1014; *Gilliland & Gaffney* v. *Southern Ry. Co.,* 85 S. C. 26, 137 Am. St. Rep. 861, 27 L. R. A. (n. s.) 1106, 67 S. E. 20; *Tacoma & Eastern Lbr. Co.* v. *A. B. Field & Co.,* 100 Wash. 79, 170 Pac. 360; *Godair* v. *Ham Nat. Bank,* 225 Ill. 572, 116 Am. St. Rep. 172, 8 Ann. Cas. 447, 80 N. E. 407; *Wolfe* v. *Missouri Pac. Ry. Co.,* 97 Mo. 473, 10 Am. St. Rep. 331, 3 L. R. A. 539, 11 S. W. 49; *Rock Island & P. R. R. Co.* v. *Potter,* 36 Ill. App. 590; *Guest* v. *Hannibal & St. Joe R. Co.,* 77 Mo. App. 258; *Kansas City Star Co.* v. *Standard*

*Warehouse Co.,* 123 Mo. App. 13, 99 S. W. 765; 3 Wigmore on Evidence, par. 2155, p. 2923.)

There is no reference of any kind on the face of the notes in controversy to the fact of their being secured by a mortgage. The general rule is that the negotiability of an instrument is not impaired in any manner by the fact that payment of same is secured by a mortgage. (2 Jones on Mortgages, sec. 834; *McDonald* v. *Randall,* 139 Cal. 246, 72 Pac. 997; *Moore & Co.* v. *Burling,* 93 Wash. 217, 160 Pac. 420; *Bailey* v. *Inland Empire Co.,* 75 Or. 309, 146 Pac. 991; *Farmers' Nat. Bank* v. *McCall,* 25 Okl. 600, 26 L. R. A. (n. s.) 217, 106 Pac. 866.)

The assignee of a negotiable promissory note secured by a mortgage takes free from equities existing between the original parties where he is a *bona fide* purchaser for value, without notice. (3 Jones on Mortgages, 7th ed., sec. 1487; 2 Jones on Mortgages, 7th ed., sec. 834; 2 Pomeroy's Equity Jurisprudence, secs. 704–714; *Spear* v. *Ryan,* 64 Mont. 145, 208 Pac. 1069.)

MR. JUSTICE STARK delivered the opinion of the court.

The complaint in this action alleges that on the twenty-first day of July, 1917, the defendants Robert Ferguson and Emma Ferguson were indebted to C. W. Dean in the sum of $2,600, and as an evidence thereof made, executed and delivered to him their promissory notes, one for the sum of $1,000 as follows:

"1,000.00.                                                     No. 1.

"Ismay, Montana, July 21, 1917.

"On or before December 1, 1918, after date, for value received, we promise to pay to the order of C. W. Dean at the First National Bank of Ismay, Montana, one thousand dollars, with interest at the rate of six per cent. per annum from December 1, 1917, until paid and with attorney's fees and all costs of collection in case payment be not made at maturity;

interest payable annually. The makers and indorsers thereof waive presentment, demand, protest, and notice of nonpayment.

"ROBERT FERGUSON.
"EMMA FERGUSON."

The second note is identical with the $1,000 note, except that it is for $1,600 and its due date is December 1, 1919.

It is further alleged that prior to the maturity of said notes, or either of them, Dean indorsed and delivered the same to the defendant Gilman L. Camp; that Camp indorsed and delivered them to the defendant A. J. Shapard; that Shapard thereafter indorsed and delivered them to the plaintiff, each of said indorsements having been made prior to the maturity of either of the notes, and that the plaintiff is the owner and holder thereof; that no part of said notes has been paid, except the sum of $258 paid on the $1,000 note and $192 on the $1,600 note. It is further alleged that said C. W. Dean was a resident of and died in Cascade county in the month of June, 1921; that the defendant Lizzie Dean was duly appointed administratrix of his estate, qualified as such, and letters of administration issued to her; that she gave notice to creditors to present their claims; that the plaintiff presented her claim on said notes for allowance; that the same was disallowed in June, 1922; that the plaintiff has employed counsel to commence and prosecute the action; and that $500 is a reasonable attorney's fee therefor.

The defendant Lizzie Dean, administratrix, filed an answer, in which she admitted the execution and delivery of the notes and that they were indorsed and delivered to Gilman L. Camp before maturity; admitted the death of C. W. Dean, her appointment and qualification as administratrix of his estate, and the presentation and disallowance of the plaintiff's claim on said notes, and denied all the other allegations of the complaint.

For a second and separate defense she alleged that, at the time of the execution and delivery of the notes to C. W. Dean,

the Fergusons, as security therefor, also executed and delivered to him a mortgage upon certain real property located in Custer county, Montana, which mortgage was duly recorded, and that it had not been foreclosed.

For a third separate defense, after setting forth the execution and delivery of the notes and mortgage as recited in the second separate defense, it is alleged that on the twenty-ninth day of October, 1917, Dean assigned and delivered the notes and mortgage to the defendant Camp by an instrument in writing, which was duly recorded on the tenth day of December, 1917. A copy of this assignment is attached to and made a part of the answer. It is then alleged that on the 17th of February, 1920, a satisfaction of said mortgage was filed for record by the defendant Camp. A copy of this satisfaction of mortgage was attached to and made a part of the answer. It certifies that "said mortgage, together with the debt thereby secured, is hereby fully paid, satisfied and discharged."

Finally the answer alleged that the notes set out in the complaint, together with the debt evidenced thereby, had been fully paid and satisfied, and the defendant fully released and discharged from any obligations thereon.

To this answer the plaintiff filed a reply, in which she denied any knowledge or information concerning the execution and delivery of the mortgage referred to therein, or the assignment of said mortgage to the defendant Camp, but said, if the notes were secured by a mortgage, that prior to the twenty-first day of July, 1918, through no act or fault of the plaintiff, or any of her predecessors in interest, it became and was valueless, and at all times since had been of no value whatever, and that a foreclosure thereof could not at any time have resulted in securing the payment of any sum or sums whatsoever to the plaintiff.

It is further alleged that, if the mortgage referred to was satisfied as alleged, such satisfaction and cancellation occurred on or subsequent to the seventeenth day of February, 1920,

and after the plaintiff had acquired the ownership and possession of the notes in suit, and that, if the defendant Camp made satisfaction of the mortgage, he was not at the time of making the same the owner or in possession of said notes and had no right to satisfy them or the mortgage, and that if, on the seventeenth day of February, 1920, the makers of said notes paid the same or either of them to Camp, such payment was of no avail, because he was not at that time the owner or in possession of them. .

Upon the issues framed by these pleadings, the cause came on for trial before the court without a jury on May 8, 1923.

The history of these notes, as disclosed by the testimony, is that on July 21, 1917, at Ismay, Montana, the defendants Ferguson were indebted to C. W. Dean in the sum of $11,600, and on that date executed·and delivered to him a series of notes totaling that amount, of which the notes in question were a part, and at the same time, as a part of the same transaction, gave him a mortgage as security therefor upon a tract of land in Custer county, which mortgage was duly recorded on July 25, 1917. A little later, on October 29, 1917, Dean made a deal with defendant Camp for an equity in an apartment house, and in payment therefor indorsed and delivered the notes to Camp by writing his name on the backs thereof, and also assigned the mortgage to Camp by the written instrument referred to in the answer, which, after describing the mortgage and assigning the same, concludes with these words: ''Together with the notes or obligations herein described without recourse on me in any event or for any cause, to have and to hold the same  *   *   *   subject only to the provisos in said indenture of mortgage contained.'' Camp subsequently indorsed and delivered said notes to the defendant Shapard who in turn, in June, 1918, prior to their maturity, indorsed and delivered them to the plaintiff. In indorsing the notes, Dean, Camp and Shapard merely wrote their names on the backs thereof without any restrictive words.

The plaintiff testified, and it was not disputed, that she purchased the notes in suit from the defendant Shapard in June, 1918, and paid him therefor their full face value in cash; that there had been paid to her on them the sum of $450 as shown by the indorsements; that when she bought the notes she had no knowledge or notice of the fact that their payment had been secured by a mortgage. There was some testimony introduced on behalf of the plaintiff for the purpose of showing that through no act or fault of hers or any of her predecessors in interest, the security mentioned in the mortgage had become valueless.

At the time Dean took the mortgage from the defendants Ferguson, there was a prior mortgage lien of $3,500 on the Ferguson land. This mortgage was subsequently foreclosed and for some reason not clearly disclosed, defendant Camp had obtained title to the mortgaged premises by a quitclaim deed prior to the twenty-fifth day of January, 1920. So far as disclosed by the record Camp was still the owner of all the Ferguson notes on the last-mentioned date, with the exception of the two which had passed to the plaintiff, and on that date, as he says, he released the mortgage "to clear the chain of title" by the instrument referred to in the answer which was duly recorded on February 17, 1920. The notes, with the indorsements, the mortgage, with the assignment to Camp, and the release thereof executed by Camp, were all introduced in evidence.

The court made findings of fact covering the entire case, and as a conclusion of law held that the plaintiff was the owner and holder of the two notes as a purchaser for value in due course without notice, and entered judgment in her favor in accordance with the prayer of the complaint. From this judgment the defendant Lizzie Dean appealed.

One of the appellant's assignments of error is predicated [1] upon the ruling of the court in allowing certain testimony to be given by the plaintiff concerning a conversation which she held with C. W. Dean by telephone just at the time

the notes were indorsed to her by the defendant Shapard. Her testimony was to the effect that she was not acquainted with Dean, did not know his voice, but called for his telephone number and received a response from a person who said that he was Mr. Dean, whereupon she asked if the notes she was purchasing from Mr. Shapard for $2,600 were good. His reply was: "Yes, sir. Anything with my John Henry on, my name, rather, is good."

This was objected to, on the ground that it was not proper to admit evidence of a telephonic conversation under such circumstances, and on the further ground that Mr. Dean had since died. In support of the latter part of the objection, counsel invoke the provisions of section 10535, Revised Codes of 1921. However, in the view which we take of the case, the testimony was wholly immaterial, and could not affect the decision of the case one way or the other, and for that reason we do not deem it necessary to pass upon the objection made.

The remaining specifications of error can be treated together. It is the contention of appellant that the notes in suit are not negotiable instruments, and are therefore subject to any defenses which would have been available to her intestate, C. W. Dean, upon two grounds: (1) That they do not contain an unconditional promise to pay a sum certain in money; (2) because their payment was secured by a mortgage, and therefore the plaintiff could not maintain an action thereon independent of a suit to foreclose the mortgage, because of section 9467, Revised Codes of 1921, which provides, "There is but one action for the recovery of debt, or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter  *  *  *  *  "  (secs. 9467–9469), unless she should further plead and prove that, without any act or fault of the plaintiff or her predecessors in interest, the mortgage security had become valueless.

In passing we shall first dispose of the question suggested by the latter part of the preceding paragraph. By the plead-

ings an issue of fact was joined upon the matter suggested, and testimony introduced thereon. The court, in its finding of fact No. 12, found that at the time the plaintiff's claim was presented to the defendant, as administratrix, and at all times since, the lands described in the mortgage only had a value of $2,708.16 and were of less value than the amount of the indebtedness secured by the first and prior mortgage thereon. This finding is assailed by appellant as not being supported by the evidence, but for reasons which will presently appear it is not necessary to review the testimony for the purpose of determining the correctness of the court's conclusion upon this point.

Appellant's contention that the notes in question are not [2] negotiable, for the reason that they do not contain an unconditional promise to pay a certain sum of money, is based upon the language of the notes, which provides for the payment of "attorney's fees *and* all costs of collection in case payment be not made at maturity," whereas the statute says that the sum payable is certain within the definition of that term although it is to be paid "with costs of collection *or* an attorney's fee." (Sec. 8409, Rev. Codes 1921.) Counsel have cited no authority in support of this view. In our opinion, the terms "cost of collection" and "attorney's fees," as used in the statute and in these notes, mean one and the same thing, and the use of both of them imposes no other or greater burden upon the maker of the notes than would the use of either of them alone.

In *McClain* v. *Continental Supply Co.,* 66 Okl. 225, 168 Pac. 815, the court said: "In a strict legal sense 'collection fees' might be a broader term than 'attorney's fees,' for 'collection fees' might embody expenses involved in endeavoring to collect said note by some person other than a licensed attorney and so this might be true of 'costs of collection'; however, the courts, in determining the meaning of these stipulations, so far as we have been able to ascertain, have all treated them as synonymous terms when used in prom-

issory notes and holding that it was a provision or stipulation to reimburse the payee and his assignees for an attorney's fee.'' (See, also, *Letcher* v. *Wrightsman,* 60 Okl. 14, 158 Pac. 1152.)

Each of these two notes, as it appears in this record, upon its face fulfills all the requirements of sections 8408, 8409 and 8591 to make it negotiable.

It is not disputed but that plaintiff became the owner [3] and holder of these notes before maturity, that she bought them in good faith and paid full value therefor, and that when she bought them she had no actual knowledge or notice that they had been secured by a mortgage or of the assignment of the notes and mortgage from Dean to Camp, with the provision that Dean transferred them without recourse.

Section 8459 provides: ''A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face. 2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact. 3. That he took it in good faith and for value. 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

Applying the test of this section to the undisputed facts discloses that the plaintiff was a holder of these notes in due course.

The plaintiff's rights as a holder in due course are set out in section 8464: ''A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.''

''A person placing his signature upon an instrument, otherwise than as maker, drawer, or acceptor, is deemed to be an indorser, unless he clearly indicates by appropriate words his

intention to be bound in some other capacity." (Sec. 8470, Rev. Codes 1921.) There were no words whatever in connection with the names written on the backs of these notes indicating that Dean, Camp or Shapard intended to be bound thereon in any capacity other than as indorsers.

One who indorses without qualification warrants to all [4] subsequent holders in due course (1) that the instrument is genuine and in all respects what it purports to be; (2) that he has good title to it; (3) that all prior parties had capacity to contract; (4) that the instrument at the time of his indorsement was valid and subsisting, "and, in addition, he engages that on due presentment it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it." (Secs. 8472, 8473, Rev. Codes 1921.)

It will be noted that each of these notes on its face contains a provision that "the makers and indorsers thereof waive presentment, demand, protest and notice of nonpayment." This waiver is binding upon all the parties thereto. (Secs. 8489, 8516, 8517, 8525, Rev. Codes 1921.)

In view of the express provisions of our Code above mentioned, there does not seem to be any question but that, as [5] between the plaintiff and the makers and indorsers of those notes, she was a holder in due course, and as such entitled to maintain this action, and that the defense of the existence of the mortgage security was not available to the defendant Lizzie Dean, as the representative of her intestate, C. W. Dean.

This same question was heretofore suggested to this court in the cases of *Cornish* v. *Woolverton,* 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4, and *Buhler* v. *Loftus,* 53 Mont. 546, 565, 165 Pac. 601, but was not decided, for the reason that the cases were disposed of on other grounds.

It is finally contended by defendant that, by reason of the [6] restrictive clause contained in the assignment of the

mortgage from Dean to Camp, no recourse could be had against Dean or the defendant as his representative. The rule, however, is that an independent collateral agreement between the parties to a note, limiting liability thereon, cannot be set up against a subsequent holder in due course. (*Anderson* v. *Mitchell,* 51 Wash. 265, 98 Pac. 751; *Coleman* v. *Shortsville Wheel Co.* (D. C.), 257 Fed. 591; *Van Tassel* v. *McGrail,* 93 Wash. 380, 160 Pac. 1053; *Ott* v. *Seward,* 221 Pa. 630, 70 Atl. 882; *New Haven etc.* v. *Jordan Co.,* 92 Conn. 705, 104 Atl. 392; *Nassau Trust Co. of City of Brooklyn* v. *Matherson,* 113 App. Div. 693, 100 N. Y. Supp. 55; *Spear* v. *Ryan,* 64 Mont. 145, 208 Pac. 1069.)

So far as the satisfaction of the mortgage made by the defendant Camp is concerned, it is not contended that he owned the notes in suit when the same was made, or that his act is in anywise binding upon the plaintiff; there was no evidence that any of the notes secured by the mortgage were ever paid, aside from the bare recitals of this instrument.

Appellant challenges that portion of the court's finding No. 2, which holds that the defendant Camp indorsed and delivered the two notes in suit to the defendant Shapard, on the ground that it is not supported by the evidence. We have examined the testimony and are convinced that the finding was fully warranted.

From a consideration of the whole case, we are satisfied that the judgment of the district court was correct, and it is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway, Mr. Justice Rankin and Honorable Frank P. Leiper, District Judge, sitting in place of Mr. Justice Holloway, disqualified, concur.

Mr. Justice Galen, absent on account of illness, did not hear the argument, and takes no part in the foregoing decision.