# GENERAL FINANCE CO., Respondent, v. POWELL, et al., Appellants.

(No. 8368.)

(Submitted April 22, 1943. Decided May 21, 1943.)

[138 Pac. (2d) 255.]

474

 

*Mr. LaRue Smith* and *Mr. H. R. Eickemeyer,* for Appellants, submitted an original and a supplemental brief; *Mr. Eickemeyer* argued the cause orally.

*Messrs. Swanberg & Swanberg,* for Respondent, submitted an original and a supplemental brief; *Mr. Stephen M. Swanberg* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an action on a contract of guaranty entered into in connection with a conditional sales contract. "General Finance Company" is merely a trade name under which William R. Davis, the plaintiff, carries on his business, which it appears consists in part of dealing in conditional sales contracts, and likewise "Industrial Machinery Company" is a trade name under which West L. Powell, the defendant, carries on the business of a retail dealer in machinery. The place of business of both parties is Great Falls. The respective concerns appear to be owned entirely by the two individuals mentioned.

The defendant sold to Surmi Mines, a corporation engaged

in coal mining some twenty-five miles south of Great Falls, a portable air compressor, with certain equipment including a Diesel engine. The contract price was $1,099. A different question involved in this controversy was before us under the same title and by the same parties in Case No. 8216, reported in 112 Mont. 535, 118 Pac. (2d) 751, and for the sake of brevity that case is referred to for the pertinent details involved in the transaction. Before the instant action was commenced the machinery was delivered to the plaintiff by the purchaser and sold by the plaintiff for $25, which amount was credited on the sales contract.

On the reverse side of the conditional sales contract this assignment and guaranty, executed by the defendant, appears:

"For value received, the undersigned hereby sells, assigns, and transfers to General Finance Co., of G. F., its successors or assigns, all right, title and interest in and to the within contract, the accounts payable thereunder, the property therein described, and the rights therefrom ensuing. The undersigned hereby guarantees the full performance of said contract and prompt payment of all sums due thereunder, together with all collection expenses; * * *. The undersigned agrees that any extension, compromise or settlement that may be granted or made by the holder hereof to or with the parties to said contract shall not in any manner release the undersigned.

"By West L. Powell"

On the delivery of the conditional sales contract by the defendant to the plaintiff with the contract of guaranty endorsed thereon the plaintiff paid the defendant $600 by check on the First National Bank of Great Falls, and at the same time issued to the defendant two "Deferred Certificates" for $150 each. One of such "deferred certificates" was admitted in evidence as plaintiff's Exhibit 4, and as it relates to the contractual relations between the parties its provisions are here recited:

"Deferred Certificate

"April 9th, 1940 No. 1451

"The General Finance Company of Great Falls will pay to Industrial Machinery Co. One Hundred and Fifty Dollars ($150.00) without interest, when and if the undersigned receives payment in full of the note or notes described on the margin hereof. This obligation shall be void and unenforceable unless presented for payment within three (3) years from the date hereof. General Finance Company reserves the right to renew, extend or compromise said note or notes, repossess and sell the property covered thereby and further reserves the right to offset against the amount due hereunder any indebtedness of the above payee of any kind whatsoever to the undersigned which may accrue prior to said maturity and/or the payment of the balance if any, to the holder hereof which shall be in full satisfaction of this obligation. This instrument may be assigned or transferred by endorsement hereon subject to all of the conditions hereof, and is payable only on the above conditions and upon the surrender hereof at the office of General Finance Co., Great Falls, Montana.

"General Finance Co., of Great Falls"

The plaintiff collected installments on the sales contract aggregating $300. Plaintiff's uncontradicted testimony is that these payments were made by the defendants. Whether the defendant collected any part of the $300 from the Surmi Mines, Inc., or not does not clearly appear. The plaintiff took up one of the deferred certificates, paying the defendant $150 therefor. No further payments were made on the sales contract resulting in default which, by the terms of the contract, brought all unpaid installments to maturity. Negotiations between the plaintiff and defendant relative to payment of the balance due on the sales contract resulted in a meeting between them at the office of defendant's attorney, Mr. W. P. Costello, now deceased, and the meeting resulted in a tacit compromise agreement. The defendant made out a check for

$540, left it in the possession of Mr. Costello to be delivered to the plaintiff when the plaintiff should have the machinery delivered at the Great Falls Iron Works' plant for the defendant. The plaintiff's uncontradicted testimony is that this mode of adjustment was proposed by the defendant.

The plaintiff testified on cross-examination that he had the machinery delivered as agreed, but the defendant then repudiated the agreement and directed Costello not to deliver the check, Thereupon, the plaintiff had the machinery advertised and sold by the sheriff, and no satisfactory bids being received the plaintiff bought the machinery in for $25 and later sold it for $50. The $25 for which the plaintiff bid the machinery in was credited on the amount due on the sales contract, reducing the amount due thereon by that sum.

The plaintiff did not pay the defendant the $150 provided for in the second "deferred certificate." It appears that such payment was not made for the reason that payments on the sales contract were never made in amounts sufficient to bring such second certificate, according to its terms, to maturity but the plaintiff allowed the defendant credit for that certificate, demanding in this action only $524, with interest and costs. For the sake of clarity, we recapitulate:

The contract price for the machinery was......................$1099.00

Credits thereon were as follows:

| | | |
|---|---|---|
| Cash paid when purchase was made | $100.00 | |
| Installments paid on sales contract | 300.00 | |
| Credit for sale price of machinery | 25.00 | |
| Credit a/c for one "deferred certificate" | 150.00 | |
| Total | | 575.00 |

Balance sued for ..............................................$ 524.00

A copy of the conditional sales contract was received in evidence as plaintiff's Exhibit 1 and is copied in the record. It contains the usual provisions and conditions found in such contracts.

478

The action was tried by the court sitting with a jury. The only testimony was by the plaintiff and Mike Surmi of Surmi Mines, Inc. Surmi's testimony was along the lines of the machinery being unfit for their use, and its being outmoded by reason of being an old model now out of production, and the court, we think correctly, held such testimony not material as no question as to fitness of the machinery was involved, and on motion such testimony was stricken. When the plaintiff rested defendant moved for a non-suit, the jury being excused for the motion to to be received. The motion was taken under advisement by the court. When the jury returned to the box the defendant rested without offering any evidence. Thereupon the court dismissed the jury, remarking that the only questoins left to be determined were questions of law for the court, and later gave judgment for the plaintiff for the full amount prayed for with interest, costs, and for attorney's fees in the sum of $75. The defendant appealed.

Four specifications of error are assigned. The first assignment ment is not clearly stated but it appears from the argument that the defendant alleges error on the trial court's holding that the defendant in order to rely on the discharge of the guarantor, which defendant contends resulted from plaintiff's acts in recovering and selling the machinery, that the discharge must have been pleaded and proved. The defendant admits that the court's holding is the general rule, but that defendant comes within an exception. The exception is adverted to in *Prosser* v. *Montana Central R. Co.*, 17 Mont. 372, 388, 43 Pac. 81, 86, 30 L. R. A. 814, and mentioned in a number of more recent decisions of this court. The rule is stated in the *Prosser Case*, a personal injury action, in this fashion: "Whenever the plaintiff's own case raises a presumption of contributory negligence, the burden of proving its absence is immediately upon him, and it devolves upon the plaintiff to clear himself of suspicion of contributory negligence which he himself has created." In *Penwell* v. *Flickinger*, 46 Mont. 526, 534, 129 Pac. 323, 325, application of the

rule arose on a different state of facts. It was there said: "When the evidence disclosed, what the complaint did not, that the assignment was made under circumstances destructive of its force as a cause of action, that situation became as available to appellants as though a special plea to the same effect had been interposed." (See, also, *Armstrong* v. *Billings,* 86 Mont. 228, 283 Pac. 226.) In our opinion no such exception to the rule applies here; first, no such ruling by the trial court appears in the record; second, the testimony clearly shows that the machinery came into the possession of the plaintiff by reason of the tacit agreement heretofore mentioned that the parties made in the office of Costello, the delivery of the machinery at the place of business of the Great Falls Iron Works being a condition precedent to the delivery of defendant's check to the plaintiff in full settlement of the balance due on the sales contract, which understanding was later repudiated by the defendant.

Defendant states that specifications 2 and 3 will be considered together "as both involve the same question, viz.: Does the evidence of respondent, * * * disclose a complete defense to the action." The arguments under these two specifications are much the same as those submitted under specification one. Clearly the defendant refuses to admit the full force and effect of the contract of guaranty accompanying the assignment of the sales contract. While it is endorsed on the sales contract it is a separate and distinct agreement between the plaintiff and defendant. It does not give rise to any contractual relation whatever between the plaintiff and the vendee named in the sales contract. (*Kelley* v. *Goldschmidt,* 47 Cal. App. 38, 190 Pac. 55.) The defendant "guarantees the full performance of said contract and prompt payment of all sums due thereunder; * * * The undersigned [the defendant] agrees that any extension, compromise or settlement that may be granted or made by the holder hereof to or with the parties to said contract shall not in any manner release the undersigned."

This is an unconditional guaranty of payment. It imports no condition precedent to the liability of the guarantor. (See sec. 8181, Rev. Codes.) "A guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice." (Sec. 8182, Rev. Codes.) "The undertaking is the guarantor's own separate contract." (*Mulany* v. *Murray,* 68 Mont. 245, 251, 216 Pac. 1105, 1106, and cases cited; *Northwestern F. & M. Ins. Co.* v. *Pollard,* 74 Mont. 142, 238 Pac. 594, 597.) In this last cited case, quoting from R. C. L., it was said: "On an absolute guaranty, the guarantor is unconditionally bound to satisfy the obligation at its maturity." In the case of *Commercial Discount Co.* v. *Howard,* 107 Cal. App. 83, 289 Pac. 906, a similar guaranty was held to be absolute, it being further held that upon recovery and sale of the property by the holder of the sales contract he was entitled to recover the balance due on the contract from the guarantor. (See, also, *Landsdowne Finance Co.* v. *Prusky,* 120 Pa. Super. 555, 182 Atl. 794, and *White Motor Co.* v. *Briles,* 137 Fla. 268, 188 So. 222.)

But, defendant contends, plaintiff admits payments on the sales contract of more than 33 1/3 per cent. of the entire indebtedness covered by the contract and therefore when the machinery was returned the sales contract under section 7597, Revised Codes, was fully performed. The question as to what extent the sales contract has been performed or failure of its performance is not before us. The suit is on the contract of guaranty to which the vendee named in the sales contract was not a party. We might say in passing, however, that the testimony is that most, if not all of the payments making up the $300 received by the plaintiff, were paid by the defendant, not by the vendee, and we think section 7597 provides a remedy that is available only to the vendee under such contracts, and not to the vendor nor to an absolute guarantor.

Furthermore, to hold that a guarantor of such a contract as

that before us could take advantage of the provisions of section 7597, which, in effect, provides that when personal property is sold under a conditional sales contract, and not less than 33 1/3 per cent, of the sales price has been paid, and the vendor then retakes the property and sells it, the contract is then fully performed, and the vendee is released, along with the guarantor, would encourage the perpetration of a fraud. If the vendee became insolvent and the guarantor, as in the case at bar, encourages the holder of the sales contract to have the property redelivered to the vendor under a promise to pay the holder of the sales contract the balance due, and the holder of the sales contract induces the vendee to return the property as requested by the vendor, and, after such arrangement is perfected, the vendor then repudiates the arrangement, he would profit by his own bad faith if the court upheld his claim of release as guarantor.

The last contention is that the court erred in allowing plaintiff's attorney's fees. The defendant's guaranty covers "all collection expenses," and an attorney's fee became necessary expenses when collection could not be made without suit. (*Wood* v. *Ferguson,* 71 Mont. 540, 549, 230 Pac. 592, and cases cited.)

Defendant's contentions of insufficiency of the complaint and want of jurisdiction are without merit.

Mr. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON, ANDERSON and ADAIR concur.

Rehearing denied June 7, 1943.