No. 83-263

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

SHERWOOD & ROBERTS, INC.,

            Plaintiff/Respondent,

      -vs-

FIRST SECURITY BANK OF MISSOULA,

                  Defendant-Third Party Plaintiff
                  and Appellant,

      -vs-

PROSPECT ASSOCIATES, INC., CHARLES W. ISALY,
SHARON M. ISALY, THOMAS H. SCHIMKE, MARY
ANN SHIMKE, DAVID A. SCHIMKE, and TAMARA R.
SCHIMKE,

            Third Party Defendants and Co-Appellants.


APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            Mulroney, Delaney & Scott; Dexter L. Delaney argued
            for First Security Bank, Missoula, Montana
            Donald Snavely argued for Prospect Associates,
            Missoula, Montana

      For Respondent:

            Garlington, Lohn & Robinson; George D. Goodrich argued,
            Missoula, Montana

                              Submitted:  January 16, 1984

                              Decided:  May 7, 1984

Filed:  MAY    1984

*Ethel M. Harrison*
_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The principle issue we determine in this case is that an instrument issued by a bank entitled "letter of credit," and containing language that it is a letter of credit must be enforced as a letter of credit, and not as an instrument of conditional guaranty.

First Security Bank of Missoula appeals from a summary judgment against it entered by the District Court, Fourth Judicial District, Missoula County, holding that the Bank was liable according to the terms of a letter of credit issued in favor of Sherwood & Roberts, Inc.

Third party defendants, Prospect Associates, Inc., have appealed from an interlocutory order of the District Court denying Prospect's motion to intervene in the case.

The procedure in the District Court is somewhat complex. Three actions have been filed in the District Court, all involving the financing of construction for Prospect Subdivision, on the west side of Missoula.

In July, 1980, Sherwood & Roberts, Inc. (Sherwood) a Washington corporation, agreed to lend Prospect Associates, Inc. (Prospect) $826,500 to finance construction of a subdivision in the Grant Creek area near Missoula. Sherwood agreed to disburse loan proceeds to Prospect according to a budget, attached to the commitment letter, specifying the amounts of the total proceeds allocable to specific purposes, including payments of SID's, taxes and development costs. The commitment letter provided that the disbursements would be made in 30 day increments to reimburse Prospect for costs, but not to exceed the budgeted amounts.

As part of the security for the loan from Sherwood, Prospect was required to obtain a $100,000 letter of credit with Sherwood as beneficiary. First Security Bank issued the document at the request of Prospect. The parties dispute authorship of the instrument. We set forth here the terms of the instrument, which was typed on the letterhead of the Bank.

"IRREVOCABLE
COMMERCIAL LETTER OF CREDIT

Letter of Credit #85
Sherwood & Roberts Inc.
2806 Garfield
Missoula, MT 59801

Re: Prospect Associates, Inc.
2806 Garfield, Suite D
Missoula, Montana 59801

Gentlemen:

At the request and for the account of Prospect Associates, Inc., of Missoula, Montana, First Security Bank of Missoula of Missoula, Montana, hereby guarantees the availability of funds in the amount of $100,000.00 for the purpose of securing Prospect Associates, Inc.'s, performance of its loan agreement with Sherwood & Roberts Inc., as well as its performance of that certain Mortgage and Promissory Note payable to Sherwood & Roberts Inc.

This letter of credit shall expire on midnight on the 15th day of July, 1982. This letter of credit shall be exercisable by Sherwood & Roberts Inc. only upon the unremedied default by Prospect Associates, Inc. in its performance of any of the following documents; that certain loan application agreement, loan commitment letter, promissory note, or mortgage, which documents evidence that certain loan transaction dated July 15, 1980 wherein Sherwood & Roberts Inc. is named as lender and mortgagee and Prospect Associates, Inc. is named as mortgagor and borrower.

FIRST SECURITY BANK OF MISSOULA

- 3 -

                    By /s/ Duane G. Scheeler
                    Duane G. Scheeler, President"

In the fall of 1980 various subcontractor bills, tax payments and interest payments went unpaid. Consequently construction of the subdivision was halted preventing completion of the subdivision and the sale of lots. The resulting loss of revenue led to Prospect's failure to make the payments required by the loan agreement and promissory note.

Prospect alleges, and filed in the District Court affidavits supporting its allegations, that this chain of events was triggered by Sherwood's failure to disburse loan funds on schedule as required by the agreement. It alleges that Sherwood decided to pull out of the western Montana real estate financing market midway in the disbursement process and unjustifiably refused to honor Prospect's proper request for disbursements. Prospect contends that had it received the requested loan proceeds, it would have been able to perform its obligations under the various loan agreements. After demanding payment, Sherwood filed a mortgage foreclosure action against Prospect and a separate action against the Bank to collect the face amount of the letter of credit.

In the bank action, First Security asserted that the document was not in fact a letter of credit, but was a conditional instrument of guaranty. Bank submitted evidence that the parties intended the instrument to be an instrument of guaranty. Sherwood's evidence was to the contrary.

The Bank and Prospect also claimed that Prospect's nonperformance was caused by Sherwood's nonperformance and was therefore not a default. Thus they argued the condition

for payment was not met and Sherwood could not recover on the letter of credit. First Security and Prospect have filed affidavits that the parties intended by use of the phrase "unremedied default" that the note would be payable only if Sherwood had fulfilled all of its obligations and Prospect then failed to perform. They emphasize that the term "default" was used rather than simply "nonperformance."

Prospect, already defendants in the mortgage foreclosure action brought by Sherwood, moved in the bank action to intervene, or for consolidation of the foreclosure action with the letter of credit action. Both motions were denied. Thereafter, the Bank filed against Prospect as a third party defendant. Sherwood moved for summary judgment on the letter of credit in the bank action. After a hearing on the motion for summary judgment, the District Court issued a order granting the same. In the order, the court stated that the letter of credit issued by the Bank was a valid letter of credit under section 30-5-102(1)(c), MCA. In addition, the court found that the condition necessary for Sherwood to collect on the letter of credit was Prospect's unremedied default on the promissory note. The court concluded that mere nonpayment by Prospect of the promissory note constituted "unremedied default," regardless of whether Sherwood caused it. The court thus found the Bank liable for the face amount of the letter plus interest to Sherwood.

The District Court certified the summary judgment against the Bank as one proper for appeal under Rule 54(b), M.R.Civ.P. The third party action between the Bank and Prospect is still pending in the District Court.

I.

- 5 -

If the instrument issued by the Bank is a letter of credit, the Bank must honor a proper demand for payment of $100,000 under the instrument regardless of whether the documents conform to the underlying contract between the customer (Prospect) and the beneficiary (Sherwood). Section 30-5-114, MCA. If the instrument is a guaranty, what difference in legal effect the Bank could hope to gain thereby is not clear. It would depend on whether the guaranty is absolute.

> ". . . Where the contract promise of the guarantor is absolute--that is, subject to no condition except the default of the principal debtor--or where the promise has become absolute by the occurrence of the named conditions, the guarantor is obligated to pay the debt of the principal debtor. In such a situation, the creditor may maintain an action against the guarantor immediately upon default of the debtor . . . and without first having proceeded against the debtor.. . . The question as to whether the debtor or any part thereof is collectible from the debtor does not effect the liability of the guarantor, the latter being unconditionally bound to satisfy the obligation.. . ." 38 Am.Jur.2d 1116 Guaranty, § 110.

And see General Finance Company v. Powell (1943), 114 Mont. 473, 138 P.2d 255.

A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor. Section 28-11-107, MCA. Generally a guaranty is conditional when by its terms it requires the creditor to pursue first and unsuccessfully the principal debtor. 38 Am.Jur.2d 1118 Guaranty, § 113.

The Bank contends in this case that the instrument is a conditional guaranty, the condition being that before the Bank is liable there should be an "unremedied default" of Prospect, which requires the determination of a factual dispute before its liability can arise, and that it was the

intention of the parties that such condition existed before the Bank was liable in this case. The Bank submitted to the District Court affidavits from its attorney and its president stating the intention of the Bank was to that effect, and the Bank contends that an issue of material fact existed before the District Court which should have prevented the entry of a summary judgment.

We hold that the instrument before us is indeed a letter of credit issued by the Bank. We are literally compelled to such holding by the provisions of the Uniform Commercial Code defining a letter of credit:

> "30-5-102. Scope. (1) This chapter applies:
>
> "(a) to a credit issued by a bank if the credit requires a documentary draft or a documentary demand for payment; and
>
> "(b) to a credit issued by a person other than a bank if the credit requires that the draft or demand for payment be accompanied by a document of title; and
>
> "(c) to a credit issued by a bank or other person if the credit is not within subparagraphs (a) or (b) but conspicuously states that it is a letter of credit or is conspicuously so entitled." (Emphasis added.)

Here the instrument, within its terms, calls itself a letter of credit, and it is conspicuously entitled "Irrevocable Commercial Letter of Credit." It is referred to as "Letter of Credit #85." Thus, the instrument is within the definition of section 30-5-102(1)(c), above.

Regardless of its conformance to the statutory definition of a letter of credit, the Bank contends that the instrument requires the factual determination of an "unremedied default," and that one must examine evidence outside the instrument to make that determination. It relies on the holding in Republic National Bank of Dallas v.

Northwest National Bank of Fort Worth (Tex. 1978), 578 S.W.2d 109, and Wichita Eagle and Beacon Publishing Company, Inc. v. Pacific National Bank of San Francisco (9th Cir. 1974), 493 F.2d 1285.

In Republic, above, the instrument before the Texas court was entitled "Irrevocable Letter of Credit," wherein the bank agreed to honor a draft for $50,000 if certain promissory notes by a third party were not paid according to their terms. The notes were not paid, and the beneficiary of the letter of credit made demand upon the bank for payment of the $50,000. The bank took the position that the instrument was not a letter of credit, but rather a guaranty, and that since the issuance of guaranties are ultra vires with respect to banks, the bank could not be held on the guaranty. The Texas court analyzed the modern trend of banks to issue standby letters of credit, and noted that a standby credit is used primarily to finance or secure an underlying intangible or monetary indebtedness undertaken by the account party "such as a promissory note." 578 S.W.2d at 113. The court held that the instrument was indeed a letter of credit, without mentioning that the instrument was entitled "Irrevocable Letter of Credit."

In Wichita Eagle, above, the Court of Appeals for the Ninth Circuit had before it an instrument which in its text referred to itself as a "letter of credit." The instrument was given to secure performance of a lease. The Ninth Circuit noted that:

> ". . . The instrument neither evidences an intent that payment be made merely on presentation on a draft nor specifies the documents required for termination or payment. To the contrary, it requires the actual existence in fact of most of the conditions specified: for termination or reduction, that the city have refused a building

permit; for payment, that the lessee have failed to perform the terms of the lease and have failed to correct that default, in addition to an affidavit of notice." 493 F.2d at 1286.

The Ninth Circuit Court recognized that letters of credit for commercial uses have expanded far beyond the international sales context in which they originally developed, but found that here the instrument strayed too far from the basic purposes of a letter of credit, namely to provide a means of assuring payment cheaply by eliminating the need for the issuer to police the underlying contract. The Ninth Circuit Court went on to say that if the letter of credit concept is to have value in new situations, "the instrument must be tightly drawn to strictly and clearly limit the responsibility of the issuer." ~~593~~ 493 F.2d at 1287. The Ninth Circuit Court held that the instrument was in fact an instrument of guaranty, which meant that the bank would be able to interpose defenses to the instrument that were available to the lessee. If we considered the instrument in the case at bar to be an obligation of guaranty, the same result would obtain: the obligation of the guarantor is not to exceed that of the principal. Section 28-11-201, MCA.

Treating the instrument as an instrument of guaranty, the Ninth Circuit Court went on in Wichita Eagle to assess the liquidated damages provided in the guaranty against the issuing bank.

We distinguish Wichita Eagle from the case at bar. In Wichita Eagle, as the Ninth Circuit Court noted, the instrument strayed too far from the basic purpose of a letter of credit. In the case at bar, the obligation of the principal, Prospect, is easily discernible. The letter of credit is exercised by Sherwood upon the unremedied default

- 9 -

by Prospect in its performance of any of the following documents: that certain loan application agreement, loan commitment letter, promissory note, or mortgage. The instruments are set out in the disjunctive; that is, nonperformance of any one of the instruments triggers the liability on the letter of credit. The promissory note is one of those instruments. Since Prospect defaulted in payment on the promissory note the liability of First Security Bank was triggered without more.

Moreover, Wichita Eagle, above, has to be read in the light of a later case decided by the Court of Appeals for the Ninth Circuit, First Empire Bank v. Federal Deposit Insurance Corporation (1978), 572 F.2d 1361. One of the judges who participated in Wichita Eagle also participated in First Empire Bank. In First Empire Bank, the United States National Bank of San Diego had become insolvent, and F.D.I.C. had become the receiver of the bank's insolvent estate. First Empire Bank had made loans to customers of U.S.N.B. relying on standby letters of credit issued by U.S.N.B. The receiver refused to honor the letters of credit when presented by First Empire Bank, contending that the instruments were conditional letters of guaranty rather than letters of credit. The contention of F.D.I.C. as receiver of the insolvent estate was that since the claims had not ripened on the date of insolvency, the receiver was not bound to honor them. The Ninth Circuit Court held that the instrument before it was indeed a letter of credit because it "creates an absolute, independent obligation and payment must be made upon presentation of the proper documents regardless of any dispute between the buyer and seller concerning their agreement, such as a dispute over the quality of the goods

- 10 -

delivered." 572 F.2d at 1366. The Ninth Circuit Court commented on the nature of letters of credit in modern usage, and the comment is worth repeating in part:

"In recent years instruments operating as letters of credit (in that they operate to create an absolute obligation upon presentation of specified documents) and termed 'standby' to distinguish them from the traditional letters of credit have been used as security devices in a variety of contexts outside the traditional area of the international sale of goods. They have been used to insure construction loans, as quasi--performance bonds, to support the issuance of commercial paper and to secure the performance of purely monetary obligations such as those involved in this case. (Citing authority.) Standby letters are convenient and inexpensive and are being adapted to many uses at this time. (Citing authority.) The principle difference between the traditional letter of credit and these newer standby letters is that 'whereas in the classical setting, the letter of credit contemplates payment upon performance, "the standby". . . "contemplates payment upon failure to perform."' (Citing authority.)

"This has created an awkward situation for national banks, since the standby letter of credit possesses more of the characteristics of a guaranty and national banks are not authorized to enter into guarantees [sic]. (Citing authority.) No contention is made here, however, that issuance of the letters of credit in question was ultra vires.. . ."

In Boise Cascade Corporation v. First Security Bank (1979), 183 Mont. 378, 389, 600 P.2d 173, 180, we refused to give letter of credit status to an instrument that did not evince a clear intention on the part of the bank to be primarily liable to the beneficiary upon compliance with the terms of the instrument, irrespective of the underlying agreements between the beneficiary and the account party. In this case, the instrument is the opposite: it evinces a clear intention on the part of First Security Bank to be primarily liable upon the nonperformance by the account party of the instruments named, particularly the payments on the promissory note. The Bank here could determine its liability

by merely examining the instruments named, and it was not necessary for the Bank to undertake a factual determination as to performance of the underlying instruments.

Although every letter of credit appears to function as a guaranty, there are important distinctions. Republic National Bank, 578 S.W.2d at 114. A true guaranty creates a secondary obligation whereby the guarantor promises to answer for the debt of another and may be called upon to perform once the primary obligor has failed to perform. Since a guaranty is ancillary to the underlying contract, a dispute as to the rights and obligations of a guarantor can only be resolved by a factual determination of the rights and obligations of the parties of the underlying contract. A bank that issues a credit however creates a primary obligation as principal, not as an agent of the account party. On the issuance of a credit the bank assumes a primary obligation independent of the underlying contract.

From either of two aspects therefore, (1) the instrument is by its terms clearly a letter of credit, or (2) the instrument conspicuously states that it is a letter of credit and is conspicuously so entitled, the District Court was correct in granting summary judgment thereon.

II.

Prospect assigns error in the order of the District Court denying Prospect's motion to intervene in the letter of credit action brought by Sherwood against the Bank. Prospect claims error in the refusal of the District Court to consolidate the letter of credit action with the foreclosure action, and with a separate action brought by one John Warner against Prospect and Sherwood & Roberts, Inc., for the

foreclosure of a mechanic's lien relating to the Prospect subdivision.

No statute gives Prospect the right to intervene in the letter of credit action. Under Rule 24(a), M.R.Civ.P., an applicant who claims an interest relating to the transaction which is the subject of the action must be allowed to intervene. Under Rule 24(b), M.R.Civ.P., he may be permitted to intervene when the applicant's claim or defense and the main action have a question of law or fact in common. In the letter of credit action however, though Prospect was bound by the underlying instruments, Prospect was not a party to the letter of credit. The obligation of the letter of credit was owed by the Bank to Sherwood upon the occurrence of the event triggering liability. The Bank's liability arose without regard to the underlying instruments, and therefore Prospect had no claim or defense which would have a common question of law or fact to the main action in the suit involving the letter of credit. The District Court was clearly correct in refusing Prospect the right to intervene in the letter of credit action.

In like manner, the letter of credit action could not be consolidated with the other two actions for the same reason; there was no common question of law or fact between the letter of credit action and the actions between the other parties respecting the independent obligation on the letter of credit. Here again the District Court was correct in denying consolidation.

The matter does not end there however. In the letter of credit action, the Bank exercised its right of third party practice under Rule 14(a), M.R.Civ.P., to file a third party complaint against Prospect for indemnity on Sherwood's claim

against the Bank. However Prospect, as a third party defendant in the letter of credit action, has the right to "assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Rule 14(a). The occurrence which is the subject matter of the letter of credit action is the default in the payment of the promissory note by Prospect to Sherwood. Therefore, under Rule 14(a), Prospect has the right in the letter of credit action now, as a third party defendant, to assert its claims against Sherwood in that action. The sentence which gives Prospect that right was inserted in the federal counterpart to our rule, Rule 14(a), F.R.Civ.P., by virtue of the 1946 amendment. The committee noted with respect to that amendment:

> ". . . A new sentence has also been inserted giving the third party defendant the right to assert directly against the original plaintiff any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff. This permits all claims arising out of the same transaction or occurrence to be heard and determined in the same action. See Atlantic Coast Line R. Co. v. United States Fidelity & Guaranty Co. (MD Ga 1943), 52 F.Supp. 177.. . ." 1 Moore's Federal Practice Rules Pamphlet (1984) at 138.

The purpose of the enabling provision in Rule 14(a), M.R.Civ.P., is to provide a final determination in one suit of all the issues that might otherwise take several suits.

The indemnity action by the Bank against Prospect as third party defendant is still pending in the District Court. On remand Prospect should be given opportunity to make such claims against plaintiff Sherwood as Prospect has the right to make under Rule 14(a), M.R.Civ.P.

- 14 -

We also point out to the District Court, in the exercise of its discretion if called on, the provision of Rule 62(h), M.R.Civ.P. as follows:

> "Rule 62(h). _Stay of judgment upon multiple claims_. When a court has ordered final judgment on some but not all the claims presented in the action under the conditions stated in Rule 54(b), the court may stay enforcement of that judgment until the entering of a subsequent judgment or judgments and may prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered."

The federal counterpart of Rule 62(h) is identical. In a fairly recent case, Curtiss-Wright Corporation v. General Electric Company (1980), 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1, the Supreme Court noted that Rule 62(h) allows the court certifying a judgment under Rule 54(b) to stay its enforcement until the entering of a subsequent judgment or judgments. It also considered the language of the Rule that the court may "prescribe such conditions as are necessary to secure the benefit thereof to the party in whose favor the judgment is entered." Under this rule, the Supreme Court assumed that it would be within the power of the federal district court to protect all parties by having the losing party deposit the amount of judgment with the court, directing the clerk to purchase high yield government obligations and to hold them pending the outcome of the case. In this way, valid considerations of economic duress and solvency, which do not effect the judicial considerations involved in a Rule 54(b) determination, can be provided for without preventing Rule 54(b) certification.

### III.

The order of the District Court granting summary judgment in favor of Sherwood & Roberts is affirmed. The

- 15 -

order of the District Court denying consolidation of the cases, and denying Prospect's motion to intervene is also affirmed. This cause is remanded for further proceedings consistent with this opinion. Costs of appeal shall be borne as incurred by the respective parties without recourse to other parties.

_John C. Sheehy_
Justice

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_____

_____

_____
Justices

I concur and dissent as follows:

I fully concur in the holding by the majority that affirms the district court's entry of summary judgment in favor of Sherwood and Roberts, Inc. I dissent from the balance of the majority opinion.

The majority goes forward to decide procedural issues which I do not believe are before this Court.

The only appealable order in this case is the summary judgment entered by the trial court in favor of Sherwood and Roberts, Inc. and against the First Security Bank of Missoula. The only order certified for finality under Rule 54(b) M.R.Civ.P., is that summary judgment. A notice of appeal was filed by First Security Bank and by Prospect appealing the granting of summary judgment against the First Security Bank. No issues are raised on appeal except the issue of whether the trial court erred in granting summary judgment on the "letter of credit".

That portion of the majority opinion which deals with the procedural aspects of the case is entirely gratuitous.

I would simply affirm the granting of summary judgment.

Justice

-17-

Mr. Justice Fred J. Weber, dissenting:

The letter of credit issued by First Security specifies that payment becomes due only upon unremedied default. I disagree with the majority's conclusion that under the facts of this case, mere non-payment by Prospect constitutes "unremedied default" and automatically triggers liability on the letter of credit.

Section 30-5-114(1), MCA provides that an issuer must honor a demand for payment which complies with the terms of the relevant credit regardless of whether goods or documents conform to the underlying contract between the customer and beneficiary. Strict compliance with the terms of the letter of credit is required. Courtaulds North American, Inc. v. North Carolina National Bank (4th Cir. 1975), 528 F.2d 802, 805-06; White & Summers, Uniform Commercial Code §18-6 (2d ed. 1980).

As applied to the letter of credit involved here, section 30-5-114(1) creates a significant contradiction because the triggering term of the letter of credit requires occurrence of an event in the underlying transaction. Thus, a determination that a demand for payment complies with the terms of the letter of credit requires a legal and factual analysis of the underlying transaction to ascertain whether the triggering event of "unremedied default" has occurred. The majority has assumed that the triggering terms of the letter of credit are nonpayment by Prospect and notice of default to the Bank, even though the letter itself requires payment only upon unremedied default by Prospect. The letter of credit says "unremedied default," not "nonperformance."

The independent nature of the letter of credit means that liability of the issuer is determined by the terms of the letter of credit rather than according to the obligations

and rights arising from the underlying transaction. However, the issuer and beneficiary may agree upon the triggering terms of the letter of credit and thus may agree, as here, that the triggering event will be an occurrence in the underlying transaction which will require some element of performance by the beneficiary. This does not mean that these prerequisites to payment arise from the underlying transaction; rather, for purposes of the letter of credit, they arise from the choice of terms and terminology employed in the letter of credit by the issuer and beneficiary. Here, a consideration of Sherwood's alleged activity which caused nonperformance arises from the language of the letter of credit itself, rather than from the separate underlying transaction. Regardless of whether this document is a letter of credit rather than a guaranty, the issuer has available the defense of noncompliance with the terms of the letter of credit.

Whether failure to pay is "default" is a question which can be answered only by further reference to the underlying agreements, which are specifically listed in the letter of credit, and principles of law. The majority has ignored this issue and has concluded that nonpayment is necessarily default, which is contrary to Montana law.

The term "unremedied default" necessarily implies unexcused nonperformance. Where the act of a creditor prevents the debtor from performing, performance is excused. Section 28-1-1301, MCA provides in part:

"_When delay or failure to perform or offer to perform excused._ The want of performance of an obligation or of an offer of performance, in whole or in part, or any delay therein is excused by the following causes, to the extent to which they operate:

"(1) when such performance or offer is prevented or delayed by the act of the creditor or by the

-19-

operation of law, even though there may have been a stipulation that this shall not be an excuse . . .."

This statute excuses Prospect's nonperformance if Sherwood in fact caused the failure of Prospect to perform.

In Pioneer Engineering Works, Inc. v. McConnell (1949), 123 Mont. 171, 212 P.2d 641, the Court held that payment was excused under this statute where nonpayment was caused by actions of the other party to the contract. There, the failure of the seller of gravel-crushing equipment to provide conforming equipment prevented buyer from meeting obligations on a contract to provide gravel to the government for building Fort Peck Dam with a resulting inability to pay for the equipment. The Court held that seller could not recover where nonpayment was caused by seller's breach. 123 Mont. at 192, 212 P.2d at 652. In Smith v. Gunniss (1943), 115 Mont. 362, 144 P.2d 186, the Court stated that "'he who prevents a thing from being done shall never be permitted to avail himself of the non-performance which he himself has occasioned.'" 115 Mont. at 379, quoting 12 Am.Jur. section 329. See also Gramm v. Insurance Unlimited (1963), 141 Mont. 456, 462, 378 P.2d 662, 665.

Where performance is excused there is no default. An unjustified refusal by Sherwood to disburse loan monies which caused nonperformance by Prospect would excuse nonperformance under section 28-1-1301, MCA. This raises a factual question as to whether Sherwood caused Prospect's nonperformance.

The majority suggests that Prospect's promissory note creates an obligation independent of Sherwood's performance in the underlying transaction. However, the promissory note expressly incorporates by reference the terms of Sherwood's commitment letter. The promissory note states that it is given for an actual loan of $826,500 (which Sherwood

allegedly refused to fully disburse). It also states that it shall be construed with the other documents relating to the transaction and in accordance with Montana law. The promissory note therefore does not create an independent obligation of Prospect to pay.

It is true that the commercial usability of letters of credit should be protected. Careful inquiry is required to determine if the standard of "unremedied default" has been met. This requires a careful and factual determination. It is true that in the ordinary letter of credit situation, the court will not consider the completion of the underlying transaction. However, that rule is not applicable to the present situation where the parties have required that the bank make payment only where an "unremedied default" occurs. The meaning of "unremedied default" in this case is a question of fact to be resolved at trial, not on summary judgment.

I would reverse the conclusion of the District Court that nonperformance is necessarily "unremedied default", and would remand the case for trial to determine what was intended by "unremedied default" and whether Sherwood's nonperformsance caused and therefore excused Prospect's nonperformance.

_____
Justice

I concur in the foregoing dissent.

_____
Justice

_ al;so oi . . . s . ss . . . . . . e .

_____
Justice

-21-