## ROBERT DOLLAR CO. v. AMERICAN ASIATIC CO.

Circuit Court of Appeals, Ninth Circuit.
May 28, 1928.

No. 5256.

1. **Principal and agent** ⚖=100(6)—**Agent having authority only with respect to cargo could not bind it by consent to vessel leaving without cargo.**

Where agent had authority only with respect to cargo, *held*, he could not bind charterer by consenting or agreeing that vessel leave without cargo.

2. **Shipping** ⚖=58(1)—**Libel for breach of charter party could be maintained by charterer, who entered into contract in its own name as agent for another, to owner's knowledge.**

Libel for breach of charter party was maintainable in the name of the charterer, in whose name charter party was signed, though it entered into the contract as agent for another, as known by the shipowner before and at the time of execution of the charter party.

3. **Shipping** ⚖=58(1)—**That libel for breach of charter party was in name of nominal charterer, and did not allege representative character, held immaterial (Admiralty Rule 22).**

That libel for breach of charter party was in the name of the nominal charterer, and its representative character was not alleged in the pleadings, was immaterial, and did not constitute a violation of admiralty rule 22, as to requisites of libel; the owner presenting its defense against the principal as though named as libelant, and the principal being plainly privy to the proceedings and bound by the decree, and it appearing, also, that before libel was filed the nominal charterer, with the express agreement of its principal, assigned its right to sue for the breach, with express right in assignee to sue to enforce charterer's rights, either in the name of the charterer or of itself.

4. **Shipping** ⚖=58(3)—**Recoverable damages from breach of charter party by ship departing from original loading port without cargo stated.**

Charterer of vessel to go from San Francisco to Acapulco, Mexico, for rails, and return to San Francisco to complete loading, if any space remained, and then to proceed with cargo to Kobe, Japan, *held*, by reason of owner's breach of charter party by returning ship to San Francisco without cargo, entitled to recover as damages from owner expenditures for voyage to Acapulco, and in redelivering ship to owner at Kobe, and in endeavoring to minimize expense, including expense of reshipping from Kobe cargo which it had accepted at San Francisco for through carriage to Singapore.

Appeal from the District Court of the United States for the Southern Division of Northern District of California; Adolphus F. St. Sure, Judge.

Consolidated libels by the Robert Dollar Company against the American Asiatic Company and by the American Asiatic Company against the Robert Dollar Company. From an adverse decree, the Robert Dollar Company appeals. Affirmed.

McCutcheon, Olney, Mannon & Greene, Farnham P. Griffiths, Ira S. Lillick, Hunt C. Hill, and Hugh Montgomery, all of San Francisco, Cal., for appellant.

Fitzgerald, Abbott & Beardsley, of Oakland, Cal., and Bell & Simmons, Manson & Allan, and Golden W. Bell, all of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. American Asiatic Company, charterer, filed a libel against the Robert Dollar Company, owner, to recover damages for breach of charter party, whereby the owner let to charterer the ship Kaijo Maru. Owner filed a libel for additional charter hire. The adventure was a voyage to Acapulco for rails and return to San Francisco to complete loading, if any space were available, and a voyage with the rails to Kobe, Japan. The performance of the charter party was guaranteed by a bank in Oakland, Cal., and by Weissbaum & Co. The damages alleged arose by reason of the departure of the ship from the loading port without cargo. For a full statement of the case, reference is made to American Asiatic Co. v. Robert Dollar Co. (C. C. A.) 282 F. 743.

After trial of the consolidated libels, charterer's libel was dismissed, and owner's libel was sustained. On appeal, this court held that the Dollar Company breached the charter party, and reversed the decree, with remand of the case. American Asiatic Co. v. Robert Dollar Co., supra, certiorari denied 261 U. S. 615, 43 S. Ct. 361, 67 L. Ed. 828. Thereafter, in due course, a commissioner, after hearing testimony, found that the owner owed charterer $137,513.87, together with interest, in the sum of $92,312.87. Exceptions to the report of the commissioner, together with briefs, were filed by the owner. The District Court overruled the owner's exceptions, confirmed the report of the commissioner, and awarded final decree. The owner appeals.

[1] Appellant's contention is that the report of the commissioner is without support and is unfounded in law; that there is no evidence that the libelant charterer suffered any damage by reason of the return of the ship from Acapulco without cargo and certain rails, that the charterer is estopped from asserting a right to collect damages in a representative character, that libelant cannot maintain this suit in admiralty as an agent, and that in any event the damages allowed are excessive. Appellant lays stress upon part of our opinion upon the former appeal, wherein, referring to a contention made by the owner that one Nash, employed by Weissbaum & Co. as its agent, consented to the departure of the ship from Acapulco before loading cargo, we said:

"The evidence on that subject is conflicting, but we do not regard it as material. It is not claimed that Nash gave any written instructions to return to San Francisco. Moreover, he was not the agent or representative of the charterer, but of the railway company and Weissbaum & Co., the cargo owner. He had no authority to give sailing instructions on behalf of the charterer, or bind it by consenting or agreeing to an act which completely destroyed the purpose it had in view. His business was to attend to loading the cargo."

Appellant herein argues that Nash, as agent of Weissbaum & Co., cargo owner, acquiesced in the return of the ship, and thereby wiped out the liability now asserted against the Robert Dollar Company, and that the American Asiatic Company had no connection with Weissbaum & Co., in that the latter's interests were separate and distinct from the interests of the Asiatic Company.

We think appellant misconstrues our opinion. Taking the whole context, the view was that whether or not Nash assented to the return of the ship was immaterial, because he had no authority to give sailing instructions or to consent to an act which completely destroyed the purpose in view. That he had certain limited authority was never questioned by charterer or owner. Charterer's brief on the former appeal stated that charterer had no agent at Acapulco with authority to direct the master to depart without cargo, or to acquiesce in such a course, and that Nash's authority was only with respect to cargo. That position was assumed throughout, and both owner and charterer consistently asserted that Nash was the agent of Weissbaum & Co., and that, unquestionably, Weissbaum & Co. were the real charterers of the ship.

The evidence quoted in charterer's brief on the former appeal clearly showed that Weissbaum & Co. guaranteed the performance of the charter, paid the charter hire, and that the Robert Dollar Company had full knowledge of such relationship at the time the charter party was entered into. In its petition for rehearing the owner urged that Nash had been appointed by Weissbaum & Co. and that, as the adventure was a joint one between Weissbaum & Co. and charterer, Nash was necessarily a representative of the charterer, and that the real charterer was Weissbaum & Co. It was also pointed out, in owner's petition for certiorari filed in the Supreme Court, that the record showed that the real promoters of the enterprise were Weissbaum & Co., "who utilized the services of the American Asiatic Company, because it was a shipping concern, to procure the charter which they guaranteed," and that Nash, as agent of Weissbaum & Co., also became the agent of charterer. The decision of this court that Nash had but limited authority as defined must stand.

[2, 3] We cannot agree with appellant's argument that the libel was not properly maintainable by the charterer named in the party. The charter party was signed by the Robert Dollar Company by its vice president, and the American Asiatic Company by its president. However, the fact being clear that the Asiatic Company entered into the contract as but an agent for Weissbaum & Co., of which fact the Robert Dollar Company had full knowledge before and at the time of the execution of the charter party, the Dollar Company could properly sue the nominal charterer or its principal, Weissbaum & Co., as could the Asiatic Company or Weissbaum & Co. sue the Dollar Company. N. J. S. N. Co. v. Merchants' Bank, 6 How. 381, 12 L. Ed. 465; Albany & R. Iron & Steel Co. v. Lundberg, 121 U. S. 451, 7 S. Ct. 958, 30 L. Ed. 982; Namquist v. Whitman (C. C. A.) 221 F. 49; Williston on Contracts, vol. 1, p. 542; 21 R. C. L. 902; Northern Com. Co. v. Lindblom (C. C. A.) 162 F. 250; Kelly v. Barber, 211 N. Y. 68, 105 N. E. 88, L. R. A. 1915C, 256. That the libel was in the name of the American Asiatic Company, or that the representative character of the libelant was not alleged in the pleadings, is not material, in the light of the fact that the owner presented its defense against Weissbaum & Co. as though that firm were named as libelant.

Rule 22, Admiralty Rules, has not been violated. Plainly, Weissbaum & Co. are

privy to the proceedings and bound by the decree. It appears, also, that before the libel was filed the nominal charterer assigned its right to sue for breach of charter party to a bank in Oakland, California, with an express right in the bank to sue to enforce charterer's rights, either in the name of the charterer or the bank. To that assignment Weissbaum & Co. expressly agreed. The Cheesebrough, Fed. Cas. No. 25; The Detroit, Fed. Cas. No. 3832.

[4] In fixing damages the District Court allowed restitution of actual expenditures: (a) In preparing for and carrying out the voyage from San Francisco to Acapulco; (b) in redelivery of the ship to the owner at Kobe; (c) in endeavoring to minimize the expense, not only in such redelivery, but for the loss which the charterer had already sustained by reason of the ship's departure in ballast from Acapulco. It is manifestly just that the owner should refund the charter hire, which was collected by it in advance. The owner never earned such hire. Equally just is it that the owner should be held for payment for the sums expended for the preparation for and prosecution of the voyage, which the owner's act defeated.

The established rule is that libelant is fairly entitled to compensation for its actual losses and expenses incurred in and about the voyage, and for its labor and service in procuring another ship, and its reasonable disbursements in vindicating its rights, beyond what it would receive as indemnity for the regular taxed costs. United States v. Behan, 110 U. S. 338, 4 S. Ct. 81, 28 L. Ed. 168; The Tribune, 24 Fed. Cas. No. 14171. As shown by the statement in the former opinion of this court, the ship came back in ballast to San Francisco from Acapulco on July 14th. The captain was asked to return to Acapulco, but refused, unless he obtained permission from Japan. The ship was loaded at San Francisco for Japan, but not until after the owner was notified by the charterer that, in loading, charterer did not waive any rights which had accrued to it by reason of the steamer's departure from Acapulco.

On July 24th the charterer was advised that the ship was ready to return to Acapulco, but under protest, and without admitting responsibility for her having left that point. But that letter was not received by the charterer until July 25th, and it was not until July 26th that the charterer received the owner's letter of July 25th, consenting to a return of the ship to Acapulco, which consent was given under protest and without admitting responsibility for the return of the ship to that port. On July 23d, however, the second month's charter hire was paid under written protest. But as said by Judge Bean in the former opinion, by July 24th, however, "there had been loaded on her a large amount of cargo for Japan, and it was thought that the loss or damage would be mitigated by having the steamer proceed to Japan, instead of discharging the cargo and returning to Acapulco."

The charterer made efforts to get another ship to carry the cargo loaded on, and contracted for the Kaijo Maru for carriage to Japan, but found the expense of doing what was requisite would be very heavy. Other obstacles which were considered were the refusal of one of the guarantors on the charter party to consent to a return of the ship to Acapulco, and the probability that suits might be instituted by persons with whom the charterer had arranged to ship goods. The situation was troublesome, yet we think the charterer did all it reasonably could to lessen the damages. The ship sailed for Kobe on August 1st.

Under the circumstances we are of opinion that charterer could recover for actual expenses or losses reasonably incurred in mitigating the ultimate loss. Carver on Carriage of Goods by Sea, § 713; Sanders v. Munson (C. C. A.) 74 F. 649.

The commissioner and the District Court regarded the expenditures of the charterer as the direct consequence of owner's frustration of the adventure contemplated by the charter party. Such expenses were properly allowable. In doing this he took the unpaid charter hire, $37,975.63, as an added expense of earning the freight on the Kobe voyage, and deducted it from the total expense, $158,290.24, of redelivering vessel at Kobe. Owner claims that under the circumstances there should be a deduction of an item of $16,014.56 from the amount awarded charterer by the commissioner and court. Charterer had to assemble a cargo at San Francisco very quickly and send the ship to Japan with cargo. In doing this charterer accepted cargo for through carriage to Singapore, believing that upon arrival at Kobe vessels would be available for carrying the cargo to ultimate destination points. But, when the ship arrived at Kobe, charterer found the expense of such transshipments greater than expected, and in transshipping a loss of $16,014.56 was actually incurred.

In the absence of evidence tending to show that the expenditures in transshipment were unreasonably incurred, we think charterer was properly allowed to recover, with interest. United States v. Behan, supra. We find no ground for disturbing the judgment.

Affirmed.