## PUTNAM LUMBER CO. v. ASHCRAFT–WILKINSON CO.

### No. 8713.

Circuit Court of Appeals, Fifth Circuit.

April 22, 1938.

234

then at Martinique, for a full cargo of fertilizer from a safe port near Sandomingo City, to Jacksonville, Florida, at $3 per gross ton; that it had failed to furnish the schooner in accordance with the charter party; and that, compelled to procure another ship at a considerably higher freight rate, libelant had sustained damages in the sum of $3,869.43.

The defense was that though there were negotiations for, there was no, charter party; that all the proposals for it had been conditioned on respondent's reaching the Clise at Martinique before she sailed, which respondent was unable to do; and that the damages sued for were not recoverable.

The District Judge thought and found: That there was a contract, that it was breached, and that libelant should recover $2,614.23. He gave judgment accordingly. This appeal challenges the findings and decree.

The contract, if there was one, was the result of negotiations between Ashcraft for libelant, and Crosby, for respondent. These negotiations, consisted of preliminary correspondence, beginning March 6, with a letter from respondent soliciting freight for the steamer Clise then at the West Indies, and running through March 31, 1936; of a telephone conversation on April 9, and according to appellee, a closing telegram of the same date.

Appellant denies that the telegram closed the contract. It insists that it was sent subject to the condition affixed in the telephone conversation, and repeated in its letter of April 10th, that the master of the Clise be reached before sailing from the West Indies.

We cannot agree with appellant. The telegram[1] of April 9 was positive and unequivocal. It was sent in response to Ashcraft's request by telephone for a firm charter as a basis for closing for the fertilizer. Upon the receipt of the telegram the fertilizer was bought, and preparations for loading it were made. In view of appellee's request for a positive confirmation as soon as respondent had made definite ar-

James B. Watson, W. H. Watson, C. J. Brown, and S. Pasco, all of Pensacola, Fla., and H. P. Adair and C. G. Ashby, both of Jacksonville, Fla., for appellant.

William Fisher, of Pensacola, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The libel was for breach of a contract of charter. The claim was that respondent had chartered its schooner, the J. W. Clise,

---

1 "This will confirm telephone conversation by which we have chartered to you schooner J. W. Clise for full cargo of fertilizer from safe port near Sandomingo City to Jacksonville, Florida at three dollars per gross ton loading and discharging charterers expense stop Vessel now ready to sail from Martinique loading to commence on arrival loading two hundred tons daily subject fifty dollars per day demurrage excess time required freight payable arrival cargo Jacksonville mailing charter party please telegraph quickly name and address to whom vessel should report arrival Sandomingo."

rangements for the Clise to lift the fertilizer, and of its immediate action in reliance upon the telegram, appellant's effort to import a condition into its unconditional terms will not do. It was too late, after the telegram had been sent and acted upon, to qualify it as appellant attempted to do in its letter of April 10.

■ As to the damages, appellant insists that they should have been limited to the excess paid per ton over the $3 per ton agreed upon as the rate for the Clise.

We do not think so. After appellant had breached its contract, appellee diligently and in good faith took steps to secure another ship. It was unable to do this except by chartering a much larger ship at a gross price of $6,500 which, if it had carried only the tonnage the Clise was to carry, would have caused a loss, on freight alone, of more than appellee recovered. In a good-faith effort to minimize its damages, therefore, it purchased other fertilizer. This reduced the per ton freight charges, but it brought more fertilizer to Jacksonville than at that season appellee could dispose of at a fair price. It was thus faced with the choice of forcing the cargo off at sacrifice prices, greatly increasing its loss, or of storing part of the cargo until it could be sold on a fair market. To appellant's advantage, appellee chose the latter course.

After a full hearing, the District Judge, upon a careful canvass of all that appellee had done to minimize the damages and the result of that doing, and with the utmost fairness toward appellant, arrived at an amount as damages which certainly did no more than, if it did as much as to, make libelant whole as to the greater part of its losses.

■ Appellant's attack upon the decree, that it was an award of special damages, is not sound. The damages allowed were not special. They were general damages, in the light of the breach, the damages flowing from it, and the successful efforts of appellee to minimize them. In allowing damages for breach of a charter party a court is not bound by any fixed or precise measure. The aim is compensation, to be assessed on the basis, as near as may be, of what the charterer's situation would have been had the charter been carried out and the cargo delivered as agreed upon. London-Savannah Naval Stores Co., v. So. A. S. S. Line, D. C., 248 F. 949; McDonald v. Rosasco, 3 Cir., 20 F.2d 320; The Rossend Castle, D.C., 30 F. 462; Grace & Co. v. Luckenbach S. S. Co., D.C., 258 F. 49; Robert Dollar Co. v. American Asiatic Co., 9 Cir., 25 F.2d 791.

■ In arriving at just compensation for a deliberate breach of contract, courts in general refuse to be bound by rigid, hampering rules.

In West Lumber Co. v. C. R. Cummings Export Co., Tex.Civ.App., 196 S.W. 546, 552, it is said, citing many authorities: "It is a fundamental and cardinal principle of the law of damages that the injured party shall have compensation for the injury sustained. The injured party is entitled to recover full indemnity for his loss, and to be placed as nearly as may be in the condition which he would have occupied had he not suffered the injury complained of. No measure of damages which does not afford just compensation for the loss sustained can stand the fundamental test. Upon this principle the measure of damages in any case must be based, or it neither accords with principle nor authority."

■ Courts of admiralty are no exception; indeed, "they administer the broadest equity." The Georgian, 5 Cir., 76 F.2d 550.

We find the decree in accordance with these settled principles. It is affirmed.