**JOHN HANCOCK MUT. LIFE INS. CO. v. CASEY et al.**

No. 4128.

Circuit Court of Appeals, First Circuit.

May 8, 1946.

230

See also 149 F.2d 484.

G. K. Richardson, of Boston, Mass. (Richardson, Wolcott, Patten & Bennett, of Boston, Mass., of counsel), for appellant.

John C. Johnston, of Boston, Mass., pro se, and for Casey, individually and as trustee, appellees.

Edward E. Cohen, of Boston, Mass., appeared pro se, appellee, but filed no brief and did not argue.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is an appeal from several orders relating to disbursements in a proceeding for corporate reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq.

On November 1, 1940, Carlton Hotel, Inc., hereinafter referred to as the debtor, purchased from John Hancock Mutual Life Insurance Company, hereinafter referred to as the appellant or the mortgagee, the premises known as the Hotel Buckminster, in Boston, and certain personal property contained therein, for $360,-000. As part of the purchase price the debtor executed a mortgage note in the sum of $345,000 secured by a mortgage of the real property with statutory power of sale. The mortgage contains no acceleration clause, and runs until November 1, 1955, when a final balance of $183,170 becomes due. The note was also secured by a chattel mortgage on the personal property contained in the hotel and by an assignment to appellant of existing leases, such assignment empowering the assignee, upon default of payments under the terms of the mortgage note, to take possession of the premises and collect the rents and profits thereof. Included in the assignment was a lease of part of the premises to the Yankee Network, Inc.

On August 1, 1942, the debtor failed to make the payments on the mortgage note falling due on that date.

On August 5, 1942, the debtor filed in the court below its petition for reorganization pursuant to § 128 of Chapter X of the Bankruptcy Act, 52 Stat. 886, 11 U.S.C.A. § 528. On this date the debtor was in possession of the premises.

On August 12, 1942, the mortgagee took possession of the premises under the terms of the mortgage for breach of condition.

The debtor's petition for reorganization was approved by the court on August 18, 1942, and Thomas J. Casey, Esq., an appellee herein, was appointed trustee.

Meanwhile, on August 17, 1942, the United States filed, also in the court below, a petition for condemnation of the Buckminster Hotel premises except that portion thereof occupied by the Yankee Network, Inc., as lessee. The interest sought to be taken was "a term for years ending June 30, 1945 * * * said term to be cancellable at the election of the United States on June 30, 1943, or on June 30, 1944, which election shall be signified by the giving of sixty days' notice." On November 18, 1942, the United States deposited with the clerk of the district court the sum of $34,945 as the estimated just compensation for taking the use and occupation of the premises from August 17, 1942, to June 30, 1943. Judgment was entered for the United States on the petition for condemnation and the statutory declaration of taking. On August 21, 1943, the United States made an additional deposit of $40,000 into the registry of the court as the estimated just compensation for taking the use and occupation of the premises from July 1, 1943, to June 30, 1944. On August 24, 1943, the United States filed an amendment to its declaration of taking, correcting the estate to be acquired so as to read as follows: "The estate taken for said public uses is a term for years ending June 30, 1944, extendable for yearly periods thereafter during the existing national emergency at the election of the United States, notice of which election shall be filed in this proceeding at least sixty days prior to the end of the term taken or subsequent extensions thereof * * *."[1]

The present appeal is the tenth taken by John Hancock, the mortgagee, on one or another phase of the above reorganization proceeding and condemnation proceeding. The earlier appeals are found in John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1943, 134 F.2d 162, certiorari denied 1943, 319 U.S. 757, 63 S.Ct. 1176, 87 L.Ed. 1709; Id. (2 cases), 1 Cir., 1943, 139 F.2d 207; Id., 1 Cir., 1944, 141 F.2d 104, certiorari denied 1944, 323 U.S. 713, 65 S.Ct. 39, 89 L. Ed. 574; John Hancock Mut. Life Ins. Co. v. Thompson, 1 Cir., 1944, 147 F.2d 761; John Hancock Mut. Life Ins. Co. v. Casey (2 cases), 1 Cir., 1945, 147 F.2d 762; Id., 1 Cir., 1945, 149 F.2d 484, and John Hancock Mut. Life Ins. Co. v. Hurley, 1 Cir., 1945, 151 F.2d 751, certiorari denied John Hancock Mut. Life Ins. Co. v. Donovan, 1946, 66 S.Ct. 819. In addition, in No. 4054, John Hancock petitioned for leave to file a petition for a writ of mandamus in relation to the reorganization proceeding, which was denied by us, without opinion, January 10, 1945.

In John Hancock Mutual Life Ins. Co. v. Casey, 1943, supra, 134 F.2d 162, we affirmed an order in the reorganization proceeding entered September 16, 1942, enjoining the mortgagee from pursuing foreclosure proceedings and exercising the power of sale, also ordering it to relinquish to the trustee possession of the premises and of the personal property therein. In the same case we affirmed an order entered September 17, 1942, directing the mortgagee to turn over to the trustee the sum of $1,100 which it had collected from Yankee Network, Inc., lessee. Since then, the rentals due from Yankee Network, Inc., have been collected by the trustee in reorganization.

By order entered May 4, 1943, in the condemnation proceeding, the court below directed the clerk to disburse to the trustee the initial deposit of $34,945 made by the United States. We affirmed that order in John Hancock Mutual Life Ins. Co. v. Casey, No. 3930, 1943, supra, 139 F.2d 207. On September 14, 1944, the district court in the condemnation proceeding directed

---

[1] Subsequently the United States exercised its option to continue the taking for the additional period from July 1, 1944, to June 30, 1945, and on July 18, 1944, paid into the registry another deposit of $40,000 as the estimated just compensation therefor. In a memorandum filed by the district court on July 6, 1945, in the present case, it is stated: "The United States has, since the date of the hearing [April 17, 1945], renewed its taking for the year from July 1, 1945, to June 30, 1946, and will pay $40,000."

disbursement to the trustee, out of the further deposits which had been made by the United States, of the sum of $13,922.17; and by an order of the same date, entered in the reorganization proceeding, the court directed the trustee to pay to the mortgagee the said sum of $13,922.17 plus the sum of $34,945 aforesaid (total $48,867.17), in satisfaction of arrears of principal and interest upon the note and mortgage to and including May 1, 1944. These two orders were affirmed by us in John Hancock Mutual Life Ins. Co. v. Casey, 1945, supra, 147 F.2d 762. Subsequently, by orders entered in the condemnation proceeding, the district court has directed disbursement to the mortgagee, out of the condemnation fund on deposit, sums to meet further installments of principal and interest falling due on the mortgage note.

On October 7, 1943, the district court entered an order denying a motion by the mortgagee that the reorganization proceeding be dismissed or that the debtor be adjudged a bankrupt. This court reversed that order in John Hancock Mutual Life Ins. Co. v. Casey, 1944, supra, 141 F.2d 104, and remanded the case with directions that the reorganization proceeding under Chapter X be terminated, leaving open for consideration by the district court whether to adjudge the debtor a bankrupt or to entertain a motion by the debtor to amend its petition so as to transmute the proceeding into one under Chapter XI, 11 U.S.C.A. § 701 et seq. The trustee applied for a writ of certiorari, which was denied, 1944, 323 U.S. 713, 65 S.Ct. 39, 89 L.Ed. 574. After remand of the case by us, the district court held hearings on April 17, June 6, and June 19, 1945, upon the question left open under the terms of our mandate and also upon certain petitions to which we shall later make reference. In a memorandum filed July 6, 1945, the district court stated its reasons for concluding to dismiss the Chapter X proceeding without adjudicating the debtor a bankrupt. Pursuant thereto, the court on July 12, 1945, entered its decree after mandate dismissing the petition for reorganization. Also on July 12, 1945, the court entered its final decree ordering that the trustee be discharged and that the estate be closed "except as otherwise provided by decree entered this day directing disposition of the funds in the hands of the trustee including costs and expenses of these proceedings as specified therein, and that he file his final account within four weeks."

With the foregoing abbreviated statement by way of background, we come to the orders which are the subject of the present appeal.

At the hearings on April 17, June 6, and June 19, 1945, above mentioned, the district court also had before it: (1) A petition by the trustee for allowance of the sum of $2,071.67 disbursed as proper and necessary expenses, and for allowance of a fee of $15,000 for the trustee's services, of which he had already received $1,000 on account; (2) a petition by J. C. Johnston for allowance of a fee of $10,000 for services as counsel for the trustee; (3) a petition by Edward E. Cohen for allowance of a fee of $35,000 for services as counsel for the debtor, and (4) a petition by the trustee for determination by the court of the amounts due the mortgagee upon its mortgage note for attorneys' fees, costs of moving, storage and care of personal property, or otherwise. In its memorandum filed July 6, 1945, the district court dealt with all these matters.

By order entered July 6, 1945, pursuant to its memorandum, the district court allowed the trustee's petition in the sum of $13,000 compensation (of which $1,000 had already been paid) and $2,071.67 for disbursements. By another order entered July 6, the court allowed the petition of counsel for the trustee in the sum of $7,500 compensation. By a third order entered the same day, the court allowed Cohen's petition in the sum of $1,000 for compensation. These three orders are embraced in the present appeal.

Since the funds then in the trustee's hands were derived almost exclusively from the rental moneys collected from Yankee Network, Inc., lessee, upon which the mortgagee had a lien by virtue of the assignment of lease, it was necessary for the court to determine the amount of, and to provide for the payment of, all arrears owing to the mortgagee under the terms of the mortgage note before the remainder

of the rental moneys in the hands of the trustee could be used as general assets for payment of the expenses of the reorganization proceeding. As we have already stated, the arrears on account of principal and interest had been made up out of disbursements from the deposit in the condemnation proceeding. But the debtor had in addition agreed, in the mortgage note, "to pay all costs of collection when incurred, including reasonable attorneys' fees," and the performance of this obligation was also secured by the assignment of the Yankee Network lease. On this account the mortgagee had claims, up to April 1, 1945, in the amount of $9,283.04 for expenses, mostly in connection with the moving, storage and care of personal property of the debtor, and which the court in its memorandum of July 6, 1945, approved, with the exception of items aggregating $1,386.13 which it ruled could not be chargeable to the mortgage note. The mortgagee also had claims for over $20,000 for counsel fees and disbursements in connection with the tangled litigation arising out of the two parallel proceedings for reorganization and for condemnation. Of this amount the court ruled that only $2,-500 for counsel fees and $164.85 for costs, totaling $2,664.85, were properly chargeable to the mortgage note.

On July 12, 1945, the trustee petitioned for authority to make disbursements of the items theretofore approved in the court's memorandum of July 6, 1943, and also for authority to make disbursement to the mortgagee of certain additional amounts not covered by said memorandum, including installments which fell due on July 1, 1945, for principal and interest on the mortgage note, and a sum on account of estimated real estate taxes for the year 1945. On July 12 the court entered its order authorizing and directing the trustee to make the disbursements forthwith, as set forth in said petition.

In its notice of appeal the mortgagee, in addition to appealing from the orders entered July 6, 1945, allowing fees to the trustee, to counsel for the trustee, and to counsel for the debtor, in the amounts above stated, also purported to appeal "from that part of said memorandum dated July 6, 1945" which disallowed to the mortgagee the greater part of its claim for expenses incurred for services and disbursements of its attorneys, and which disallowed $1,386.13 of its claim for miscellaneous expenses.[2] But the memorandum of July 6, 1945, is not an order or judgment and cannot be made the subject of an appeal. We shall treat this portion of the appeal as being in substance an appeal from the order of July 12, 1945, directing the trustee to make disbursements, in so far as said order fails to include authority to disburse to the mortgagee certain amounts claimed by it and disallowed by the court. Appeal is also taken from this order of July 12, 1945, in so far as it directed disbursements to others than the mortgagee.

With respect to the disallowance of items totaling $1,386.13 in the mortgagee's claim for expenses, the court in its memorandum makes this explanation:

"The first mortgagee had incurred expenses for the moving, storage and care of personal property of the debtor and for other small items in the amount of $9,283.-04 to April 1, 1945. Although the first mortgagee obtained this property under circumstances which the trustee has contended amount to conversion, it is pointed out by the trustee that the charges are reasonable, and would have had to be paid by the trustee in the event that the first mortgagee had not moved and stored the furniture.

"With some exceptions, therefore, the trustee does not object, and I am going to allow these items. However, there are certain items which I believe cannot properly be allowed. There are charges amounting to $1,336.13 incurred for the payment and maintenance of help to retain possession of the personal property

[2] The notice of appeal also purported to appeal "from so much of said memorandum as disallows John Hancock Mutual Life Insurance Company miscellaneous items totaling $109.34." No reference to this is contained in the brief, and we have been unable to identify in the record the items referred to. Accordingly, we take no further notice of this portion of the appeal.

of the debtor, all incurred after the appointment of the trustee, and while the property was in custodia legis. These charges cannot be allowed.

"There is also an item of $50 for· an auctioneer's fee incurred after the appointment of the trustee and after foreclosure had been enjoined, for the purpose of foreclosing the mortgage. This cannot be allowed.

"Thus, there must be deducted from the $9,283.04 the sum of $1,386.13, leaving $7,896.91, which is allowed."

After examination of the testimony dealing with these matters, we are unable to conclude that the court below erred in ruling that the amounts thus disallowed could not be deemed proper expenses of collection chargeable to the debtor under the terms of the mortgage note.

With reference to the larger claim for attorneys' fees and disbursements, the court ruled "that the mortgagee is entitled to costs and counsel fees only to November 18, 1942. In my opinion, reasonable attorneys' fees for these services are $2,500. I am, therefore, allowing the mortgagee $2,500 for counsel fees and $164.85 for costs, totaling $2,664.85." We think that the court was in error in drawing this sharp line, and that some further allowance is due the mortgagee for counsel fees and costs incurred after November 18, 1942.

In its memorandum the district court concluded that what was done by counsel for the mortgagee until November 18, 1942, might be considered as reasonably necessary for the collection of the note. The court continued:

"Until that date, the trustee was not in a position to pay the arrearages due on the mortgage. However, on that date the United States Government deposited sufficient money in the Registry of the court to pay all arrearages on the mortgage. The trustee then offered to pay all of the arrears and interest due on the first mortgage and constantly reiterated that offer. There was no actual tender; but such a tender would have been futile. The first mortgagee refused at all times to accept the amount due for arrears and interest

and apply it to such arrears and interest until an order for such payment and such application was affirmed by the Circuit Court of Appeals on the mortgagee's appeal. The mortgagee has sought all along, not to recover that to which it was legally entitled, but rather, to recover the full amount unpaid on the note, the practical result of which, at the time, would probably have been to obtain all of the assets of the debtor corporation, and inequitably squeeze out all other creditors."

But the trustee was not in a position, on November 18, 1942, to pay the arrears then due on the mortgage note. True, the United States had on that date, in the condemnation proceeding, deposited in the registry of the court the sum of $34,945; but it was not until May 4, 1943, that the court ordered this sum disbursed to the trustee. There was a wide disagreement between the trustee and the mortgagee as to the disposition which should be made of the deposit in the condemnation proceeding. The trustee was of opinion that, if the current defaults on the mortgage note were cured by payment out of the condemnation deposit, the mortgagee would be obliged to relinquish all further claim upon the remainder of the deposit, which would then be available to be turned over to the trustee to be dealt with as general assets of the debtor. As appears from the record in John Hancock Mutual Life Ins. Co. v. Casey, No. 3931, 1 Cir., 1943, 139 F. 2d 207, the district court made a finding that the trustee "has made no formal tender of any money to the John Hancock Mutual Life Insurance Company in payment or partial payment of its mortgage, but that he has talked with Mr. Richardson, attorney for John Hancock Mutual Life Insurance Company, and has told him that 'if he would release to the trustee the claim of the John Hancock Company for the funds on deposit,' he, the trustee, would 'see that the mortgage arrears were brought up to date and paid in full.'" On the other hand, the mortgagee maintained the position that it was not only entitled to a turnover of all the rental moneys in the hands of the trustee derived from the Yankee Network lease, to be applied to the arrears on the mortgage note, but that

it was also entitled to be paid from the condemnation deposit the whole amount thereof up to the amount remaining unpaid on its mortgage. As later appeared from our decision in John Hancock Mutual Life Ins. Co. v. Casey, 1945, 147 F.2d 762, both the trustee and the mortgagee were in part mistaken in their views as to the proper disposition of the condemnation fund.

■ Because of this impasse, the default was not cured and the arrears continued to mount. Certainly, some of the services of counsel for the mortgagee subsequent to November 18, 1942, in protection of the mortgagee's security interest and in the effort to procure payment of the arrears were properly chargeable to the debtor as "costs of collection". Included in this category were the efforts to get the injunction set aside or vacated, John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1943, 134 F.2d 162; Id., 1 Cir., 1943, 139 F.2d 207, and Id., 1 Cir., 1945, 149 F.2d 484; also, the effort, eventually successful, to procure a termination of the reorganization proceeding, Id., 1 Cir., 1944, 141 F. 2d 104. In addition, counsel for the mortgagee rendered various routine services in the two proceedings which did not eventuate in appeals.

■ On the other hand, we do not think that the mortgagee is entitled to charge to the debtor, as proper "costs of collection," the expenses of litigation in which the mortgagee challenged an order by the district court in the condemnation proceeding for payment to the City of Boston on account of overdue taxes on the premises, John Hancock Mutual Life Ins. Co. v. Thompson, 1 Cir., 1944, 147 F.2d 761, nor in the aftermath of that case involving liability on the supersedeas bond, John Hancock Mutual Life Ins. Co. v. Hurley, 1 Cir., 1945, 151 F.2d 751. The same may be said of the appeals taken by the mortgagee from the orders by the district court for disbursement to the mortgagee of $48,867.-17 out of the condemnation funds in satisfaction of arrears of principal and interest on the mortgage note, John Hancock Mutual Life Ins. Co. v. Casey, 1 Cir., 1945, 147 F.2d 762.

■ Appellant makes the broad claim that the district court erred in directing any disbursements, out of rental moneys in the trustee's hands, to persons other than the mortgagee. As stated in its brief: "The appellant's contention is that, having a lien on both the rent monies in the hands of the trustee and upon the condemnation monies in the Registry of the Court, the rental monies may not be disbursed to others until either its mortgage is satisfied in full or its mortgage is not in default, and that no part of the payments received by it from the condemnation fund can be counted in determining whether default exists as long as it is under liability to repay them into the Registry of the Court." No authority is cited for this proposition, and we do not think it is a tenable one. There is a theoretical possibility that the amount eventually determined as just compensation for the taking might prove to be less than the deposit made by the United States as estimated damages; and that the United States in that event might have a claim against the mortgagee for some part of the deposit theretofore disbursed to it. United States v. Miller, 1943, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55. In that contingency—here an exceedingly remote one indeed—the result would be that a condition of default would thereby be reinstated, and the mortgagee's various security powers would again come into play. But as matters now stand, default has been cured to the extent of the payments so made and received pursuant to court order fully authorized under 40 U.S. C.A. § 258a.

■ It results from the foregoing that the order of July 12, 1945, directing the trustee to make disbursements, should be vacated, in so far as it orders payments made to parties other than John Hancock Mutual Life Insurance Company. As to the three orders entered July 6 fixing the allowances to the trustee, his counsel, and counsel for the debtor, respectively, the propriety of the amounts so allowed is not reviewable in the present appeal. See Cohen v. Casey, 1 Cir., 1945, 152 F.2d 610. However, after the District Court shall have determined the increased amounts

236

due the' mortgagee pursuant to this opinion; it may be that insufficient free funds will remain in the trustee's hands out of which to pay in full the allowances to the trustee, his ·counsel, and counsel for the debtor. Solely for the purpose of enabling the District Court to take appropriate action in this contingency, the afore-mentioned three orders entered July 6, 1945, will also be vacated by us.

The three orders of the District Court entered July 6, 1945, are each vacated; the order of July 12, 1945, directing the trustee to make disbursements, is vacated in so far as it orders payments made to parties other than John Hancock Mutual Life Insurance Company; and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.