168 So.2d 826 (1965)
CONSTRUCTION ENGINEERING COMPANY OF LOUISIANA, Inc., Plaintiff-Appellant,
v.
The VILLAGE SHOPPING CENTER, INC., et al., Defendants-Appellees.
No. 10263.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1964.
Rehearing Denied December 1, 1964.
Writ Denied January 22, 1965.
*828 Nelson & Gray, Shreveport, for plaintiff-appellant.
Milton W. Schober, Shreveport, for The Village Shopping Center, Inc., Ben T. Johnston, and George A. Brown, defendants-appellees.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
Plaintiff instituted this action to recover of the defendant corporation and its promoters, stockholders, and directors, Ben T. Johnston and George A. Brown, engineering fees under a contract between plaintiff and defendant-corporation dated October 11, 1960, wherein plaintiff agreed to perform certain engineering services, including the preparation of plans and specifications, for a shopping center to be constructed on property owned by Johnston and Brown and located at the intersection of Jewella and Greenwood Roads in the City of Shreveport. Plaintiff also sought recognition of a statutory lien on the property.
Of the amount claimed, plaintiff was awarded judgment in the sum of $4,749.80. Recognition of the lien was denied. From the judgment rejecting plaintiff's claim to the additional sum of $14,250.20, and its claim to a lien and privilege, plaintiff appealed. In answer to the appeal, the defendant-corporation prayed for damages in the sum of $45,375.00, allegedly arising from its failure to sell the land upon which the shopping center was to be built due to plaintiff's failure to complete the plans and specifications in accordance with the contract.
By the terms of the contract, plaintiff undertook to furnish the necessary engineering, including design, plans, specifications, and estimates required for the shopping center, for a price of $23,749.00. Performance of the services was divided into three phases: (1) a preliminary phase, (2) a design phase, and (3) a construction phase. Twenty percent of the contract price was payable upon completion of the first phase, sixty percent upon the second phase, and twenty percent upon the third phase. During the course of trial, it was stipulated that plaintiff performed the services included within the first, or preliminary, phase of the contract.
The primary issue, therefore, relates to the second, or design, phase of the contract and particularly as to whether plaintiff performed the services contemplated thereby. No claim was made for services under the third, or construction, phase of the contract inasmuch as the contemplated construction had not been done.
The defense is primarily predicated upon the contention that the plans and specifications were incomplete and unsatisfactory, as well as not having been prepared under the supervision of a registered engineer as required by the city's building code.
At the time the contract was entered into, plaintiff had in its employ one Charles W. Pressley, Jr., a registered engineer, who continued in its employ until January 28, 1961. In the meantime, Pressley prepared the plans and specifications except for certain inconsequential details such as were to be dictated by the needs and desires of prospective tenants with whom plaintiff was instructed to cooperate. On leaving plaintiff's employ, Pressley nevertheless made his services available to plaintiff without additional remuneration. He returned to make revisions and changes. Eleven complete sets of plans and specifications were approved by him and bore his stamp of approval. Pressley testified that the plans and *829 specifications were sufficient to secure bids for the construction, with the exception of the electrical and mechanical specifications which were prepared under the supervision of plaintiff's president, a registered mechanical engineer. He further testified that the plans and specifications were prepared in accordance with the approved standards of the civil-engineering profession and were adequate not only to secure bids but for the supervision of construction. Mr. E. P. Mitchell, an experienced commercial builder, testified that he could have built the shopping center from the plans and specifications for his bid of $580,317.00.
It may be pointed out, however, that defendant-corporation, in order to expedite the construction, determined to let the work, not on a competitive bid but on a negotiated bid. Mr. Ralph Kiper, a registered architect, whose testimony was taken on behalf of defendant, testified that the plans were drawn on two large a scale, which rendered them somewhat bulky, and that they were lacking in sufficient detail for competitive bidding. However, he testified that the plans and specifications were sufficient for the construction under a negotiated bid.
The conclusion is inescapable that the defense has failed to establish that the plans and specifications of the second, or design, phase of the engineering were so incomplete that they could not have been adjusted and made to conform to the requirements of proper detail, had it been necessary. The record is implicit that no demands were ever made upon plaintiff to improve upon or to meet a different standard required by defendants. We conclude, therefore, that plaintiff completed the design phase of the contract and, unless otherwise barred, is entitled to recover therefor.
The defense that the plans and specifications were not drawn under the supervision of a registered engineer is without merit. Pressley's services were available and were actually utilized by plaintiff for the completion of the preliminary and design phases of the work undertaken. He made revisions and approved changes in the plans and specifications to make them comply with the needs of several prospective tenants. Moreover, the record establishes that plaintiff, subsequent to the termination of Pressley's services, employed another registered engineer whose services would have been available had defendant corporation elected to proceed with construction of the shopping center.
We conclude, therefore, that plaintiff is entitled to recover not only the fee prescribed for Phase One, but also for the second, or design, phase.
The individual liability of Johnston and Brown is asserted under the provisions of the statute relating to the formation of corporations for business purposes. LSA-R.S. 12:1 et seq. The articles of incorporation of The Village Shopping Center, Inc., were filed for record in the office of the Recorder of Mortgages in and for Caddo Parish, Louisiana, the parish in which the registry office of the corporation is situated; hence, the corporation came into existence. LSA-R.S. 12:5. Nevertheless, these individuals admitted that no stock was actually issued or paid for; nor was the minimum capital with which the corporation was to begin business paid. Both admitted they never paid anything into the company itself. The payment of preliminary fees, such as attorney's fees and appraisal fees, incurred in the appraisal of property never deeded to the corporation, could scarcely be said to fulfill the requirements of the statute as to paid-in capital. Nor could leases taken in the corporation's name, dependent on the prospective construction, serve as assets where the value of the leases themselves depended upon the contemplated construction which was never accomplished. Without the completion of the construction, the leases were without value. Thus, the corporation began business without any assets.
The statute, LSA-R.S. 12:9, subd. A, specifically prohibits a corporation from incurring *830 any debt or transacting any business, except business incidental to its organization or to the obtaining of subscriptions to or for the payment of its shares, until the amount of capital with which it will begin business, as recited in its articles of incorporation, has been fully paid.
Moreover, Paragraph B of the aforesaid statute provides that, where the corporation has transacted any business in violation of the provisions of this section, the officers who participated therein and the directors, except those who dissented therefrom and caused their dissent to be recorded in the minutes or who, being absent, filed with the corporation their written dissent upon learning of the action, shall be liable jointly and severally with the corporation, and with each other, for the debts or liabilities of the corporation arising therefrom. These individual defendants are therefore liable jointly and in solido with the corporation for the payment of this indebtedness. Wunsch v. Noel, 177 So. 92, La.App., 2d Cir.1937; 26 Tul.L.Rev. 227 (1952).
The trial court pointed out that it was apparent from the testimony that the construction of the shopping center was never undertaken because of defendants' inability to obtain proper financing. As already observed, defendants made no complaints about the inadequacy or incompleteness of the plans and specifications until after they were unable to obtain financing for the project. Nor were they able to sell the land with the plans and specifications at a price satisfactory to themselves. Had the financing been obtained or a satisfactory offer to buy submitted, these plans and specifications would, in all probability, have been completed.
As heretofore stated, plaintiff had substantially complied with its obligation with respect not only to the first phase, as was stipulated, but as to the second, or design, phase of the contract. The record does not establish that defendants have sustained any loss as a result of any action or failure upon the part of plaintiff. Therefore, their reconventional demand should be rejected.
Lastly for consideration is the matter of the lien claimed by plaintiff upon the land on which the shopping center was to be constructed. The statute, LSA-R.S. 9:4813, provides:
"Architects and consulting engineers, employed by the owner or his duly authorized agent or representative, in connection with buildings or other work erected or constructed under the terms of this Sub-part have a privilege for the payment of their contract charges on the building or other work, and on the land on which it stands of equal rank with the contractor. Said privilege may be recorded not later than thirty days after registry in the office of the clerk of court or recorder of mortgages of notice of acceptance by the owner of the said work, or notice of default, but affects the third persons only from the date of recordation."
From a reading of this statute, it appears that a privilege exists in favor of an architect or engineer only where buildings or other works are, at least, partially erected or constructed. No contention is made, nor does the evidence here show, that any construction was ever begun on this property. Lien statutes are strictly construed and are never extended by analogy or implication. We are therefore constrained to hold that plaintiff had no lien upon the land upon which the construction was contemplated.
Accordingly, for the reasons assigned, the judgment is amended by increasing the principal of the award to $18,999.20 and, as thus amended, is affirmed at defendants-appellees' cost.
Amended and affirmed.