**SULPHUR EXPORT CORPORATION,**
Plaintiff,

v.

**CARRIBEAN**[1] **CLIPPER LINES, INC.,**
**Weeks Harrison, Charles C. Justice, Jr.,**
**and John L. Paquette, Defendants.**

**Civ. A. No. 11105.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 2, 1968.

1. The articles of incorporation of the corporate defendant state that the name of the corporation is "Carribean Clipper Lines, Inc."

Richard Wolfe, Thomas B. Lemann, Nigel Rafferty, New Orleans, La., for plaintiff.

John W. Bryan, Jr., Henry J. Read, New Orleans, La., for defendants.

RUBIN, District Judge:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Sulphur Export Corporation (Sulexco) sued to recover damages resulting from an alleged breach of a charter party by Carribean Clipper Lines, Inc. (Carribean).[2] The three officers of defendant corporation, who were also its directors, were made defendants individually; they were alleged to be individually liable because the corporation transacted business before it received the minimum capital recited in the corporate charter in violation of La.R.S. 12:9, subd. A(2) (1950).

## FINDINGS OF FACT

1. On June 24, 1960, Sulexco as charterer entered into a voyage charter party with Carribean as chartered owner for the S/S KIM, or substitute vessel acceptable to charterer, for the carriage of 9500 tons of bulk sulphur from a Gulf port to one of several European channel ports. Negotiations leading to the execution of the charter party were conducted by Sulexco's agent in New Orleans and John J. Paquette, Carribean's President. The charter was on Sulexco's voyage charter form, with the specifics of the charter completed by Sulexco's agent and approved by Carribean. The charter party was executed by Carribean's president and secretary and by Sulexco's president.

2. Pursuant to the terms of the charter party, Sulexco timely nominated the loading port and discharge port. Notice of the vessel's readiness to load was to be submitted to charterer at least ten (10) days in advance of loading, with lay days commencing not sooner than July 25, 1960, and terminating at 5:00 P.M. on August 5, 1960. This notice of readiness was to be submitted to charterer by July 27, 1960.

3. It was urgent for business reasons that Sulexco's cargo of sulfur arrive in Europe on time.

4. Sulexco required and Carribean agreed to obtain a performance bond in the amount of $50,000, based on the amount of freight, to secure Carribean's performance of the voyage called for in the charter party, but the bond was never produced by Carribean. However, neither the requirement for a bond nor the failure to produce it was material to the principal issue of the breach of charter by Carribean's inability to furnish a vessel.

5. On July 15, 1960, an addendum to the charter party was executed substituting the S/S HOEGH SILVERCREST for the S/S KIM. The substitute was to arrive at Port Sulphur, Louisiana, about July 26–28, 1960. The quantity of bulk sulphur was declared to be 9,025 tons. The remaining terms and conditions of the June 24, 1960 charter party were not changed.

6. Carribean later mentioned several additional substitute vessels that were either unacceptable to Sulexco or were not submitted as an addendum by Carribean. On July 25, 1960, Sulexco's agent learned that the S/S HOEGH SILVERCREST was fixed elsewhere and could not perform under the subject charter. Therefore, Sulexco became concerned that a vessel would not be furnished and the cargo would not arrive on time and it began surveying the vessel market for a suitable vessel in the event Carribean failed to produce a suitable vessel. Notice of readiness was not submitted by Carribean on July 27, 1960. On July 28, 1960, Sulexco gave notice to Carribean that it felt Carribean had breached its charter agreement and that Sulexco was entering the vessel market in an attempt to find a suitable vessel and would hold Carribean accountable for any damages by Sulexco by way of possible increased charter hire.

2. See note 1.

7. At no time did Carribean have a vessel fixed for the charter, as Carribean's president admitted, and the efforts by Sulexco commencing July 25, 1960, to locate another vessel did not amount to open competition with Carribean and did not frustrate Carribean's attempts to locate a vessel. Carribean itself breached the charter party by failing to produce a vessel under the charter by failing to submit notice of readiness to load by July 27, 1960. Sulexco did not breach the charter party and was ready and able to perform all of its obligations.

8. On July 29, 1960, in order to meet its sales commitments abroad for August, 1960, deliveries, Sulexco chartered the S/S DEMOSTHENES D, which had a cargo capacity of 14,500 tons. Although this was a larger and more expensive vessel it was the only one available to Sulexco to meet its August deliveries. Sulexco made every effort to minimize damages resulting from Carribean's breach, but sustained damages in the amount of $23,533.50 based upon the increased charter hire paid for the DEMOSTHENES D.

9. Carribean's articles of incorporation stated it would not begin business until $1,000 in cash was paid in as capital, but it nonetheless transacted business before it received this capital.

10. The individual defendants Justice, Harrison, and Paquette were at all times material to this case directors and officers of Carribean. They each participated in the transaction of business by Carribean prior to its receipt of the minimum capital required by its charter, and none of them caused his dissent from the transaction of such business to be recorded in Carribean's corporate records.

## CONCLUSIONS OF LAW

1. Failure of a chartered owner to submit timely notice of readiness to load as required in a written voyage charter party in addition to the failure of the chartered owner to have a vessel fixed for carriage by the date notice of readiness was to be given is a breach of the charter party. Putnam Lumber Co. v. Ashcraft-Wilkinson Co. (The J. W. Clise) 5 Cir., 1938, 96 F.2d 233, 1938 AMC 917.

2. The arbitration clause in the charter party cannot be construed as a contractual statute of limitations. The fact that Carribean actually participated in litigation for 5½ years before expressly raising the question of the arbitration clause constitutes an election to litigate rather than to arbitrate. Nortuna Shipping Co. v. Isbrandtsen Co., Inc., 2 Cir., 1956, 231 F.2d 528; The Belize, S.D. N.Y., 1938, 25 F.Supp. 663; Sucrest Corporation v. Chimo Shipping, Ltd., S.D.N.Y., 1964, 236 F.Supp. 229; In re Tsakalotos Nav. Corp., S.D.N.Y., 1966, 259 F.Supp. 210.

3. The transaction of business by Carribean before it received the minimum capital recited in its articles of incorporation constituted a violation of La. R.S. 12:9, subd. A(2) (1950) which provides:

"A corporation * * * shall not * * * begin the transaction of any business * * * until * * * (2) the amount of capital with which it will begin business, as stated in the articles, has been fully paid in."

4. La.R.S. 12:9, subd. A(1), and 9, subd. A(2) state alternative prohibitions the violation of either one of which alone is sufficient to invoke the penalties provided by La.R.S. 12:9, subd. B, which states:

"If a corporation has transacted any business in violation of this Section, the officers who participated therein and the directors, except those who dissented therefrom and caused their dissent to be recorded in the minutes or who, being absent, filed with the corporation their written dissent upon learning of the action, shall be liable jointly and severally with the corporation, and each other, for the debts or liabilities of the corporation arising therefrom."

5. Section 9, subd. B, of the Louisiana Business Corporations Law makes each of the nondissenting directors and the officers participating in the transaction of business by the corporation in violation of La.R.S. 12:9 liable jointly and severally with the corporation for the corporation's debts and liabilities arising from such transaction of business.

■ 6. The measure of the joint and several liability with the corporation of the nondissenting directors and the participating officers is the full corporate debt or liability arising from the transaction of business in violation of the statute. This proposition is supported by the holding in Construction Engineering Co. of La. v. Village Shopping Center, Inc., La.App., 2 Cir., 1964, 168 So.2d 826. In addition it is buttressed by the fact that the limitation of the liability for unpaid capital of the stockholders of a Louisiana corporation contained in Section 12 of La.Act 267 of 1914, the former Louisiana business corporation statute, was eliminated in Section 9 of Act 250 of 1928, now La.R.S. 12:9 (1950); by the public policy of protecting corporate creditors embodied in a statute requiring the payment of minimum capital into the treasury of a newly organized corporation; by the general rule of law that persons transacting business in other than corporate form are liable jointly and severally up to the full amount of debts contracted by them; and by the decisions of the courts of states other than Louisiana dealing with the same question. See Tri-State Developers, Inc. v. Moore, Ky., 1961, 343 S.W.2d 812; Bay State York Co. v. Cobb, 1964, 346 Mass. 641, 195 N.E.2d 328.

7. Limiting the liability of the nondissenting directors, and participating officers, for the corporate debts to the amount of recited but unpaid capital, or to the amount of the total authorized capital of the corporation, would tend to frustrate the public policy embodied in the statute by emasculating the penalties provided for its violation, and would raise difficult questions as to whether the limited liability fund is owed to the corporation itself to make up its missing capital or to the creditors, and as to whether the entire fund could be recovered by the creditor swiftest in the race to the court house or must rather be prorated among all the creditors in some sort of interpleader proceeding.

8. Any limitation of the liability of the nondissenting directors and the participating officers for the corporate debts to the amount of the total authorized capital of the corporation would additionally be impractical of application in the case of corporations having only no par capital stock authorized, which is permitted by the Louisiana corporation statute.

■■ 9. Attorney's fees are not recoverable as an item of damages in a suit for breach of contract unless the parties have specifically agreed that such fees will be included. Wilson v. Brian, La. App., 2 Cir., 1955, 81 So.2d 142; Mathews v. Gaubler, La.App., Orl., 1951, 49 So.2d 774. In this case, however, the parties have agreed that "damages for non-performance of this contract shall include all provable damages and all costs of recovering same."

This clause does not specifically cover the right to attorney's fees. However, those courts that have been faced with a similar question have held that similar phrases were intended to include attorney's fees. Thus, in John Hancock Mutual Life Insurance Company v. Casey, 1 Cir., 1946, 155 F.2d 229, 235, the court held that the phrase "costs of collection" included certain attorney's fees. See also Wood v. Ferguson, 1924, 71 Mont. 540, 230 P. 592, 594; McClain v. Continental Supply Co., 1917, 66 Okl. 225, 168 P. 815. Plaintiff is therefore entitled to attorney's fees in a reasonable amount.

■ Plaintiff has suggested a fee of ten per cent (10%) of the amount of judgment, or $2,353.35. The Court believes this is a reasonable figure.[3]

---

3. No evidence was taken on the question of a proper amount to be allowed as attorney's fees. The Court did afford counsel the opportunity to submit evidence but

Therefore, plaintiff is entitled to attorney's fees in this amount.

The Clerk will prepare a judgment in accordance with this opinion.

they waived the right to do so, and submitted the matter for decision. The Court is thoroughly familiar with the amount of work undertaken by counsel in the trial of the case and is aware generally of the amount of work required to prepare for trial. In view of this and the results obtained, the Court is of the opinion that this is the minimum amount that should be awarded and therefore it is not necessary to hear evidence on the subject.