Lansdowne Finance Company *v.* Prusky,
Appellant.

Argued October 17, 1935.

Before KELLER, P. J., BALDRIGE,
STADTFELD, PARKER, JAMES and RHODES, JJ.

*Harry R. Back,* for appellant.

*David F. Maxwell,* with him *Wendell E. Warner,* and
*Edmonds, Obermayer & Rebmann,* for appellee.

OPINION BY BALDRIGE, J., January 31, 1936:

On July 29, 1932, the defendant, an automobile dealer, leased a car under a contract of bailment providing for weekly payments, totalling $375, which included a finance charge of $75. On the same day the plaintiff, a finance company, paid the defendant the sum of $300, in consideration of an assignment of this contract and the execution of a writing by the defendant, referred to as exhibit "B", which provides: "In the event that De-Soto sedan ...... leased to Sterling Burpee, be repossessed, the Reliable Motors, agrees to repossess same, paying all charges, and will take up above-mentioned DeSoto for the unpaid balance." The lessee defaulted on January 1st, and the plaintiff repossessed the car, at a cost of $15. Two days later, plaintiff demanded of the defendant the unpaid balance under the lease, plus the repossessing charges, totalling $284, which defendant refused to pay, and thereupon plaintiff stored the automobile. A suit in assumpsit was then started to recover from the defendant the amount thus demanded, plus storage charges. The facts were agreed upon in a case stated, and the issue was submitted to Judge BONNIWELL, who entered judgment in favor of the plaintiff, in the sum of $426.63.

The appellant's first position is that he, as lessor, was the sole party entitled to repossess the automobile, and, therefore, he is not liable for any charges incurred by the plaintiff. True, as the defendant asserts, exhibit "B" did not expressly say, "In the event that DeSoto sedan be repossessed by plaintiff," etc. We think, however, the intention of the parties is clear. In the assignment of the bailment lease, all the rights and remedies which the lessor had therein were transferred to and vested in the plaintiff. He, therefore, was the only party entitled to repossess the car, upon default, under the terms of the bailment contract: Weigand v. Standard Motor Co., 109 Pa. Superior Ct. 256, 167 A. 493.

That fact was, no doubt, recognized. But it was evidently contemplated that some additional right or privilege was to be given the finance company by the supplemental writing; otherwise it would not have been prepared and signed by the defendant. This view becomes plainer by reference to. the fifth paragraph of the case stated. After reciting that the plaintiff paid $300 in consideration of the assignment of the bailment lease, it is stipulated: ". . . . . . as a further consideration the defendant executed and delivered to the plaintiff his agreement . . . . . . marked exhibit 'B'." The conclusion is inescapable, that the "further consideration" was the guaranty upon the part of the defendant that if the plaintiff repossessed the car, he would, in turn, take it off plaintiff's hands, and pay all charges and the unpaid balance due under the bailment lease.

The second position taken by the appellant is that the $75 finance charge was usurious; that if he was indebted in any sum to the plaintiff, it was for the unpaid balance of the loan, amounting to $194, with interest. We are not informed what the $75 charge represented. It is common knowledge, though, that finance companies, in buying leases, have certain expenses, such as insurance covering fire, theft, collision, etc., which are generally included in their charges. It cannot be assumed without proof that this charge covered interest alone; but, in our view, that matter is of no special moment. This transaction constituted a purchase of a bailment lease, at a discount, by a finance company. The relationship was not that of borrower and lender (Cook v. Forker, 193 Pa. 461, 44 A. 560; Com. v. Motors Mortgage Corp., 297 Pa. 468, 147 A. 98; Seltzer v. Sokoloff, 302 Pa. 449, 153 A. 724) ; and without a loan there can be no usury. It was not even alleged that there was any understanding between the parties that the defendant should return the money, or any part of it, to the plaintiff, except in the event that the lessee de-

faulted in his payments. This collateral security, however, did not change the nature of the transaction. In the case of General Motors Accept. Corp. v. Mid-West Chevrolet Co., 66 F. (2d) 1, 5, the court said: "No usury can attach to a bona fide sale of property, tangible or intangible, even though it is accompanied by an agreement of the seller to indemnify the buyer against loss." See, also, C. I. T. Corp. v. Anderson (Wash.) 5 P. (2d) 990; General Motors Accept. Corp. v. Calhoun Chev. Corp. (La.), 129 So. 168; Cullum v. General Motors Accept. Corp., 68 F. (2d) 310.

Judgment is affirmed.