## General Motors Acceptance Corporation v. Freeman, Secretary of Banking

*White & Williams* and *McNees, Wallace & Nurich*, for plaintiff.

*James H. Duff*, Attorney General, and *Ralph B. Umsted*, deputy attorney general, for defendant.

RUPP, J., June 10, 1946.—Pursuant to a bill in equity filed by plaintiff, there was granted upon defendant, the Secretary of Banking, a rule to show cause why an injunction should not issue restraining him from enforcing his order directing plaintiff to cease and desist the operation in this Commonwealth of certain business transactions which the secretary alleges to be in violation of the Consumer Discount Company Act of April 8, 1937, P. L. 262, 7 PS §§761-1, et seq.

The bill avers that plaintiff is a corporation incorporated under the investment companies article of the Banking Law of the State of New York and holds a certificate of authority to do business in the Commonwealth of Pennsylvania; that it maintains offices for the conduct of its business in several cities of this Commonwealth and is a taxpayer thereof, that as part

of its business it has for a long time been, and still is, engaged in purchasing from automobile dealers obligations incurred by the owners of automobiles upon which the dealers have made repairs or have installed parts and accessories furnished by them, the obligations being secured by chattel mortgages on the cars; that defendant has informed plaintiff that he considers such activities to be in violation of section 3 of the above act and has caused to be issued and delivered to plaintiff the said cease and desist order; that in engaging in such activities plaintiff is not negotiating or making loans or advances of money or credit within the meaning or scope of the statute, or otherwise violating the statute; that, properly construed and interpreted, the statute has no application to plaintiff's aforementioned activities; and that if the construction of the statute employed by the secretary were adopted it would be violative of article III, sec. 3, of the Constitution of Pennsylvania, in that the title of the act only gives notice of regulations of credit granted to consumers, whereas the dealers are not consumers, and would also be violative of article I, sec. 10, of the Constitution of Pennsylvania and the fourteenth amendment of the Constitution of the United States.

Defendant filed a responsive answer.

At the hearing before this court, the parties offered a stipulation of admitted facts, of which, for our present purposes, we need find only the following

### Findings of fact

1. Plaintiff is a New York corporation holding a certificate of authority to do business in Pennsylvania, and has engaged in business in Pennsylvania for the past 26 years and still is so engaged.

2. Since 1939 plaintiff's business has included the acquisition, by assignment, from retail automobile dealers of the obligations of customers evidenced by notes secured by chattel mortgages on the customers' motor vehicles.

3. Any customer desiring a dealer to furnish and install accessories and spare parts in, or make repairs to, his motor vehicle on credit, furnishes the dealer a statement of his credit status and, in turn, is quoted a credit price, which is greater than the quoted cash price of the spare parts, etc., since it includes a charge for insurance (if requested by the customer) and a time payment differential.

4. The customer then makes a down payment in cash and executes a note secured by a chattel mortgage on his car in favor of the dealer as mortgagee, wherein he promises to pay the balance owing in monthly installments. He also gives the dealer the certificate of title to the automobile as security for the payments.

5. The forms of chattel mortgage and credit statement are furnished to the dealer by plaintiff, together with a rate chart setting forth the insurance charge and the amount of the time payment differential, the latter being computed on the basis of the unpaid balance of the cash price, plus the cost of insurance, if any, and the number of monthly installments in which it is to be paid.

6. After the completion of the transaction between the customer and dealer and the redelivery of the repaired, etc., car to the customer, the dealer offers plaintiff, at a discount from its face, an assignment of the note and chattel mortgage, wherein and whereby he sells, assigns and transfers to plaintiff his right, title and interest in and to the note, mortgage and the property covered thereby; guarantees the punctual payment of installments and in default of any payment to pay the full amount remaining unpaid upon demand; and in turn is wholly released from such guaranty in case of default and inability to repossess the car due to conversion, confiscation or collision, and partially released under certain other circumstances.

7. At the time of offering the assignment the dealer furnishes plaintiff with the information contained in the customer's credit statement.

8. There is no agreement between the dealer and plaintiff that the former shall offer the assignment or that the latter shall accept it if offered.

9. If, after investigation, plaintiff finds the customer's credit satisfactory and accepts the proffered assignment, it receives the note and chattel mortgage, embodying the aforesaid assignment and guaranty properly executed by the dealer, together with the certificate of title to the car. In turn, the dealer receives from plaintiff the difference between the cash price and the down payment made by the customer.

10. Plaintiff then notifies the customer of the assignment and requests direct payment to it of installments falling due.

11. If the customer has requested insurance and its cost is included in the balance owing plaintiff, the latter places the insurance and forwards the policy to the customer.

12. Plaintiff agrees to furnish collection and credit facilities to the dealer and to make collections from the customer and, in default of payment, to make repossession from the customer.

13. Upon completion of the payments plaintiff cancels the note and chattel mortgage, which he forwards to the customer together with the latter's certificate of title.

### The act

Section 17 of the Consumer Discount Company Act, supra, provides as follows (7 PS §761-17):

"This act shall not affect any existing laws, special or general, authorizing a charge for the loan of money in excess of interest at the legal rate. This act shall not apply to any person, persons, partnership, association or corporation operating under the laws related to banking institutions, building and loan associations,

credit unions or licensed under the Small Loans Act, approved June seventeen, one thousand nine hundred fifteen, and supplements or amendments, or licensed by the Secretary of Banking of the Commonwealth of Pennsylvania under the provisions of any other statute. This act shall not apply to any bona fide sale of personal property by a person regularly engaged in the sale of such personal property, wherein the purchaser may pay any part or all of the purchase price in stated installments, nor to any such bona fide sale under a conditional sale contract, lease or bailment, wherein the purchaser, lessee or bailee has the option of becoming, or is bound to become, the owner of the property upon full compliance with the terms of the agreement."

Section 3 of the act reads, in part, as follows (7 PS §761-3) :

"A. On and after the effective date of this act, no person, partnership, association, foreign business corporation organized under or by virtue of any laws other than those of this Commonwealth, nonprofit corporation, common law trust, joint-stock company, or any other group of individuals however organized, shall engage or continue to engage in this Commonwealth, either as principal, employe, agent or broker, in the business of negotiating or making loans or advances of money or credit, in the amount or value of one thousand dollars ($1,000) or less, and charge, collect, contract for or receive interest, discount, bonus, fees, fines, commissions, charges, or other considerations which aggregate in excess of six per cent (6%) per year on the amount actually loaned or advanced, or on the unpaid principal balances when the contract is payable by stated installments."

## Discussion

Plaintiff contends that the transactions involved are not loans but sales and thus do not come within the purview of the act.

It is the contention of defendant that the transactions, particularly with respect to the item of labor involved in the installation of accessories and spare parts or the making of repairs, do not come within the exemptions of section 17, supra, regarding bona fide sales of personal property; hence, they are loans, are covered by section 3 of the statute, and since the charges involved exceed six percent plaintiff is guilty of violating the act.

Thus, the only question for our determination is, are the transactions sales or loans, for if they are sales it is obvious the act has no application.

In Lansdowne Finance Co. v. Prusky, 120 Pa. Superior Ct. 555 (1936), an automobile dealer assigned a bailment lease at a discount to a finance company and agreed, if the customer defaulted and the car were repossessed, to take it up and pay all charges and the unpaid balance due. The lessee defaulted, the finance company repossessed the car and demanded of the dealer the unpaid balance plus the repossessing charges. Claiming that he, as lessor, was the sole party entitled to repossess the car and therefore not liable for charges incurred by plaintiff, defendant refused to pay. The company stored the car and sued for the aforesaid amount plus storage charges.

In affirming the judgment entered for the company by the court below, the Superior Court said (p. 556) :

"In the assignment of the bailment lease, all the rights and remedies which the lessor had therein were transferred to and vested in the plaintiff (finance company). He, therefore, was the only party entitled to repossess the car, upon default, under the terms of the bailment contract. . . .

"This transaction constituted a purchase of a bailment lease, at a discount, by a finance company. The relationship was not that of borrower and lender. . . . It was not even alleged that there was any understanding between the parties that the defendant should re-

turn the money, or any part of it, to the plaintiff, except in the event that the lessee defaulted in his payments. This collateral security, however, did not change the nature of the transaction."

Likewise, in Commonwealth v. Motors Mortgage Corp., 297 Pa. 468 (1929), on appeal from this court, the Supreme Court had before it the very important question whether a foreign corporation, chartered among other things to buy, sell and deal in automobiles and investment securities, and to give financial assistance to purchasers of personal property, and doing business in Pennsylvania, was liable for a tax on its capital stock represented by the value of automobiles to which it had title by bailment leases, secured by the customers' promissory notes, assigned from the original lessors who made the sales of the cars, the cars being in the possession of the original lessees in this State. There, defendant contended that, in effect, its dealings and business were only those of a financial agency, a money lender, a banker, as it were, holding notes with the automobiles pledged with them as collateral.

In holding defendant liable to taxation, the court said (p. 472) :

. . . This is not at all as we view the situation. In effect defendant purchased the bailment leases from the dealer, paying him the amount due on them and receiving from him the papers which accompanied the primary contract, that of bailment. But for the security which they conferred upon defendant, it would not have risked its money. It was upon the faith of our rules of law covering bailment leases that appellant came into Pennsylvania and made its investments. It would use them when to its advantage and avoid the obligations thereby incurred if it can. This we will not permit.

". . . We can very well imagine that if we took the view that the leases are in legal effect not of importance

and treated them other than as bailments with all of a bailor's rights accruing to appellant, there would be consternation in its camp and in the tents of the other concerns who have filed briefs, who, while in one breath they contend that the appellant and those in whose behalf they appear are conducting a business in the nature of banking—discounting promissory notes,— are quick to say, 'We admit unreservedly that these instruments are bailment leases'. The contentions of appellant and those filing briefs, if sustained, would make title or ownership of the automobile a mere fiction.

". . . The title to the automobiles being in defendant, the conclusion is irresistible that they are being used in its business 'to buy, sell and deal in automobiles'."

It is difficult to see how any cases could be more controlling than the foregoing. There our appellate courts found that transactions of the type here involved were sales of bailment leases and that the assignments transferred to the assignees all the rights and remedies previously vested in the assignors. In the Prusky Case the Superior Court added that the assignment was a sale because it lacked the distinguishing characteristic of a loan—provision for the return of the money paid for the lease, notwithstanding the fact that, as in the instant case, the assignment was with recourse to the assignor in case of default.

Except for the fact that the present case involves chattel mortgages rather than bailment leases, we see nothing to distinguish it from those cited above. Here too there is no provision for the return of the money paid by the assignee; here too all rights and remedies previously vested in the assignor are transferred to the assignee. It follows the assignments are sales and not loans.

Defendant relies upon the prior decisions of this court in Professional Service Credit Association, Inc.

v. O'Hara, 40 D. & C. 291, and Medical Dental Business Service of New Jersey, Inc. v. Morrison, 51 D. & C. 552. The difficulty with such reliance is that, as pointed out by Judge Mays in the latter case, each transaction of this type must be closely scrutinized in the light of its own particular facts and circumstances. There the court found that an applicant for registration to do business in this Commonwealth, which admittedly was chartered to do a loans business, was seeking to enter Pennsylvania to make loans under a plan cleverly devised to circumvent the act. A similar finding was made in the Professional Service Credit Association case. On the basis of those findings, this court refused plaintiff's registration.

Here, in line with the appellate court decisions cited, we have found the transactions involved to be sales. It follows that neither the act nor our prior decisions have any application.

### Conclusions of law

1. In acquiring, by assignment, from retail automobile dealers the obligations of customers evidenced by notes secured by chattel mortgages on the customers' motor vehicles, plaintiff is not making loans to the dealers but purchasing the obligations from the dealers.

2. The assignments not being loans but sales, the transactions do not come within the purview of the Consumer Discount Company Act of April 8, 1937, P. L. 262, 7 PS §§761-1, et seq.

3. The execution of the cease and desist order issued by the Secretary of Banking against plaintiff on September 6, 1945, must be enjoined.

### Decree nisi

And now, June 10, 1946, the rule to show cause why an injunction should not issue restraining the Secretary of Banking from enforcing an order directing plaintiff to cease and desist the operation in this Commonwealth of certain business transactions which the

secretary alleges to be in violation of the Consumer Discount Company Act of April 8, 1937, P. L. 262, 7 PS §§761-1, et seq., is hereby made absolute, and William C. Freeman, the Secretary of Banking of the Commonwealth of Pennsylvania, his deputies, agents, servants and employes are hereby enjoined from enforcing the said order of September 6, 1945.

The costs of this proceeding are to be paid by defendant.