CLYDE W. LANGILLE and JENNIE LANGILLE,
Plaintiffs,

*vs.*

CENTRAL-PENN NATIONAL BANK OF PHILADELPHIA,
a corporation of the United States of America,
Defendant.

*New Castle, July 8, 1959.*

*John S. Walker* and *Frank J. Miller,* Wilmington, for plaintiffs.

*H. James Conaway, Jr.,* of Morford, Young & Conaway, Wilmington, for defendant.

SEITZ, Chancellor: The plaintiffs seek to have discharged a bond and mortgage executed by the plaintiffs and held by the defendant, Bank, on the ground that the party through whom the defendant acquired the bond and mortgage in effect made a usurious loan. The defendant has moved for summary judgment and this is the decision thereon.

No material facts are in dispute. On May 29, 1953, Washington Lumber and Millwork Co. ("Washington") and Barco, Inc. ("Barco") made an agreement whereby Washington was to sell and Barco to buy all of Washington's deferred payment sales contracts of the type involved in this case. Barco was given an option to reject any contract if it did not approve the creditor as a purchase risk. In case of default by a creditor, Barco had full recourse to Washington.

On August 18, 1954, plaintiffs signed a contract with Washington to purchase certain building materials used to erect a prefabricated house. At the time both plaintiffs and Washington were "citizens" of Pennsylvania and the contract was executed there. The invoice, drawn the same day by Washington, indicated that the price was to be $3,990. The contract, however, called for payment of $6,191.80 as a deferred payment price. Plaintiffs further agreed to give a bond and mortgage to secure the deferred payment purchase price. At the same time, plaintiffs signed an application for deferred payment purchase. The agreement provided that if this application should be rejected, the agreement would be null and void.

On September 1, 1954, Washington forwarded the agreement to Barco. On October 27, 1954, Barco applied to defendant, Bank, for

a loan, security to include plaintiffs' bond and mortgage. Sometime before January 12, 1955, the amount of the loan was agreed upon.

On December 10, 1954, Barco had notified plaintiffs that it approved plaintiffs' application for deferred payment purchase. On January 12, 1955, plaintiffs executed their bond and mortgage to Barco, which bond and mortgage were assigned by Barco the same day to defendant as security for loans made by defendant to Barco.

Plaintiffs paid a $100 deposit and 22 monthly installments of $72.53 each. Plaintiffs now seek to discharge the bond and mortgage by a present payment of $2,900 on the theory that the tranaction giving rise to the bond and mortgage was in fact a usurious loan by Barco to the plaintiffs. It is agreed that if the transaction comes within the statute the rate of interest exceeded that which the statute permits. It is further agreed, for present purposes, that the defendant, Bank, holds subject to the same infirmity.

Since plaintiffs do not argue to the contrary, I shall assume that Pennsylvania law governs. What about the Pennsylvania case law?

The Pennsylvania cases cited by the defendant are not precisely in point. *Equitable Credit & Discount Co. v. Geier*, 342 *Pa.* 445, 21 *A.2d* 53 and *Melnicoff v. Huber Investment Co.*, 12 *Pa. Dist. & Co. R.* 405, state that the financing of sales of merchandise by the extensions of credit is not subject to the prohibition against usury. But whether the case before the court involves the extension of credit or some other kind of non-usurious loan rather than a usurious loan is the very question to be decided.

In *Lansdowne Finance Co. v. Prusky*, 120 *Pa.Super.* 555, 182 *A.* 794, there was no prior agreement between the vendor and the finance company that the latter would accept an assignment of the credit contract. In the present case the May 29, 1953, agreement between Washington and Barco is the basis of the plaintiffs' usurious loan theory.

In *Personal Discount Co. v. Lincoln Tire Co.*, 1949, 67 *Pa. Dist. & Co. R.*, 35, where the finance company sued the lessor on the finance company's right of recourse, the defense of usury was disallowed on

the grounds that as between the lessor and the lessee, there was a bona fide credit transaction and as between the finance company and the lessor, there was a legitimate sale of negotiable instruments. The relationship between the finance company and lessee was not discussed. Moreover, it is not quite clear that the agreement between the finance company and the lessor predated the execution of the lessee's notes and bailment leases.

In *Hare v. General Contract Purchase Corp.*, 220 *Ark.* 601, 249 *S.W.2d* 973 cited by the plaintiff, the Arkansas court first felt obliged by precedent to uphold a transaction as not being covered by the usury provision of the State Constitution. However, the court issued a "caveat" to the effect that in the future it would submit to the jury the bona fides of an apparent credit transaction where the seller had some assurances that he could discount the paper with some finance company. The Arkansas court stated that the basis of its caveat was the mandate of the Arkansas Constitution. No such mandate exists in Pennsylvania. Nor do the Pennsylvania cases appear to adopt the "factual issue" approach of the Arkansas court.

During oral argument the Georgia case of *Jackson v. Commercial Credit Corp.*, 90 *Ga.App.* 352, 83 *S.E.2d* 76 was cited. The formal transaction in the Jackson case is similar to that in the case at bar. However, in that case the Georgia court found that a cause of action was stated on the basis of the allegation that an oral agreement to pay interest was made between the finance company and the vendee and that a conditional sales contract was subsequently and only incidentally executed as a cloak for the usurious loan. The facts here do not permit a similar evaluation.

Historically, the prohibition against usury has been to protect those who are forced by adversity to borrow and/or to obtain extensions of time for payment of obligations already incurred. An exception to the prohibition against usury is made for the credit transaction for three reasons: First, the policy that a man should be able to sell what is his for what he can get for it; second, the fact that those purchasing goods are less likely to be doing so because of adverse circumstances than those borrowing money or attempting to obtain a time

extension; and third, the recognition of the need for credit in an expanding economy.

Passing over the first two reasons, it seems clear that the Pennsylvania court has not looked upon the so-called credit transaction with disfavor. But plaintiffs say the court is not here dealing with a credit transaction because Washington knew by virtue of its contract with Barco that Barco would purchase Washington's credit contracts. In effect plaintiffs say that Washington did not extend credit. Plaintiffs further say that Barco did not extend credit, since credit can be extended only by the seller of goods; and it is agreed that Barco is not the seller. In these assertions plaintiffs are correct. But the fact that the transaction involved a "loan" by Barco rather than the extension of "credit" by Washington or Barco does not necessarily bring the transaction within the usury statute.

Every credit transaction partakes of a loan, a loan by the seller to the buyer. Therefore, it is impossible to distinguish "loan" from credit per se. Where violation of a usury statute is alleged, semantics must give way to substance; and the question must always be whether the transaction in question was the kind of transaction which it was the intention of the legislature to prevent, i. e., was the "loan" a loan within the meaning to the statute. See *Dunn v. Midland Loan Finance Corp.*, 206 *Minn.* 550, 289 *N.W.* 411. Frequently the issue is formulated in terms of "credit" versus "cash" sale. Compare *Commercial Credit Co.* v. *Tarwater*, 215 *Ala.* 123, 110 *So.* 39, 48 *A.L.R.* 1442. In either case the real issue is the same.

I do not believe it was the intention of the Pennsylvania Legislature, in passing the Pennsylvania usury statute, to prevent loans carrying an interest rate in excess of 6% if the loans were directly connected, in a single transaction, with the bona fide purchase of property. There are at least two types of such loans. First, loans by the seller to the buyer, which, in the commercial world, are called "credit." Second, loans by a third party to the buyer which are not "credit" but which also are not within the prohibitions of the usury statute, since they are, in the contemplation of the parties, part of a single transaction.

It is clear that the plaintiffs were primarily purchasing property and only secondarily borrowing money. The "loan" therefore is not within the statutory prohibition against usury.

Other arguments advanced by plaintiffs have been considered and found to be without merit. Defendant's motion for summary judgment is granted.

Present order on notice.